CITY OF SOUTH EUCLID *v.* CLAPACS.
CITY OF SOUTH EUCLID *v.* SULLIVAN.
CITY OF SOUTH EUCLID *v.* SYLVESTER.

[Cite as City of South Euclid v. Clapacs, 6 Ohio Misc. 101.]

(Nos. 8268, 8269, and 8270—Decided February 7, 1966.)

CRIMINAL ACTIONS: South Euclid Municipal Court.

*Mr. Paul Mancino, Jr.*, city prosecutor, for plaintiff.
*Mr. William E. Aurelius, Jr.*, for defendant Sylvester.
*Mr. Stanley Kammer*, for defendant Sullivan.

KLEIN, J.  The affidavit in case No. 8268 reads as follows:
"Before me, Marjorie M. Walters, Clerk of South Euclid Municipal Court, personally appeared Yetta Naftulin, * * * who being duly sworn according to law, deposes and says, that on or about the 8th day of July, 1965, at the City of South Euclid, in said County and State, one, Daniel Clapacs, * * * committed an assault and battery on Jan Naftulin and Joel Briskey, then and there being in violation of Section 513.01 of the Codified Ordinances of the City of South Euclid, Ohio in violation of law, and further says not.

"(Affiant)  Yetta Naftulin.
"Sworn to and subscribed before me, this 18th day of August, 1965.

"Marjorie M. Walters
Clerk of the Municipal Court."

The affidavits in cases Nos. 8269 and 8270 are also dated August 18, 1965, and are identical to the above affidavit except that in case No. 8269 the name of "Charles Sullivan" is inserted in lieu of the name of "Daniel Clapacs" and in case No. 8270, the name of "Joseph Sylvester" is inserted in lieu of the name of "Daniel Clapacs."  Since the legal issue before the court in each of these cases is identical, they will be discussed together in this opinion.

The Facts

Since the description of the incident in these affidavits was

not predicated on what Yetta Naftulin had observed herself, but rather, was based solely on what had been related to her by others, the defendants moved to quash the affidavits. At the time of the oral hearing on said motions to quash, the affiant, Yetta Naftulin, acknowledged that she did not observe the assault and battery described in said affidavits; that her son, Jan Naftulin, and one Paula Nyer told her about the alleged assault and battery; that she (affiant) was told that this incident occurred on the sidewalk in front of the Mayflower Lounge near Mayfield and Green; that she did not go to the scene of the alleged assault and battery after said incident; and that her son, Jan Naftulin, was 20 years old and Paula Nyer was approximately 19 years old.

## The Law

The statute controlling the disposition of these cases is Section 2935.09, Revised Code, entitled *"Accusation by affidavit to cause arrest or prosecution."* The applicable portion of this statute reads as follows:

"In all cases not provided by Sections 2935.02 and 2935.08, inclusive, of the Revised Code, in order to cause the arrest or prosecution of a person charged with committing an offense in this state, a peace officer, or a private citizen having knowledge of the facts, shall file with the judge or clerk of the court of record, or with a magistrate, an affidavit charging the offense committed, * * *."

## Contention of the City Prosecutor

In his brief, the prosecutor states that "It appears from a reading of this statute (Section 2935.09, Revised Code) that the words, 'having knowledge of the facts' modify both peace officer and private citizen * * *"; that this statute does not state whether the knowledge of the peace officer or private citizen "* * * must be actual knowledge or may be knowledge gained through conversations with persons involved in the crime * * *"; that "It would appear to defeat the purpose of the statute if it were so construed that those persons who were actually involved in the criminal offense or who actually witnessed the criminal offense were the only ones who could sign an affidavit in a misdemeanor case"; and that the courts in the following two Ohio cases held "* * * that an affidavit filed by one who has only hearsay knowledge of the facts is proper":

104

*State* v. *Steele* (1952), 95 Ohio App. 107; *Miller* v. *State* (1924), 2 Ohio Law Abs. 488.

In addition to the above two cases, the prosecutor cites the following Ohio decisions in support of his contentions in this case:

*State* v. *Gutilla* (App. 1950), 59 Ohio Law Abs. 289; *City of Columbus* v. *Glenn* (App. 1950), 60 Ohio Law Abs. 449; *City of Willoughby* v. *Hugebeck* (1964), 2 Ohio App. 2d 36; *City of Columbus* v. *Meadley* (1946), 78 Ohio App. 490; *City of Toledo* v. *Miscikowski* (1955), 99 Ohio App. 189.

## Contention of Defendants

It is the contention of the defendants that Section 2935.09, Revised Code, is punctuated in such a manner that a clear distinction is made between peace officers and private citizens, to wit: under the language of Section 2935.09, Revised Code, a private citizen must have "knowledge of the facts" before he is authorized to sign an affidavit; whereas, no such restriction is placed on a peace officer; that since Yetta Naftulin's sole information about the incident referred to in her affidavit was based on hearsay, she was not authorized to execute an affidavit under the provisions of Section 2935.09, Revised Code; that the cases cited by the prosecutor are distinguishable since they involve affidavits signed by peace officers, not private citizens.

In support of their contention that an affidavit cannot be signed by a private citizen who does not have personal knowledge of the facts, the defendants cite *U. S.* v. *Carter*, 5 Ohio Fed. Dec. 592.

## Discussion

Section 2935.09, Revised Code, became effective January 1, 1960. It has no exact, or similar, counterpart in the General Code or any prior statutes.

The following portion of Section 2935.09, Revised Code, is critical to the disposition of the instant case: "* * * a peace officer, or a private citizen having knowledge of the facts, * * *." The punctuation in the above clause is such that the phrase, "having knowledge of the facts," modifies "private citizen" but not "peace officer." Stating it another way, the commas set off the entire phrase "or a private citizen having knowledge of the facts" from the remainder of

the language in the statute.[1] Thus, it is clear that a private citizen must possess "knowledge of the facts" before being authorized to file an affidavit under Section 2935.09, Revised Code, whereas, no such restriction is placed upon a peace officer.

It is patent that under the law the authority vested in a peace officer in enforcing the law is broader and more encompassing than that vested in a private citizen. This is exemplified by another statute found in Chapter 2935, Revised Code (the chapter now under consideration). Section 2935.03, Revised Code, provides that an officer may make an arrest without a warrant when he observes a person in the commission of a misdemeanor.[2] A private citizen, however, does not possess such a right.[3] In view of these facts, one can readily understand why the Ohio Legislature made a distinction between peace officers and private citizens in Section 2935.09, Revised Code, to wit: A private citizen must possess "knowledge of the facts" before being authorized to sign an affidavit charging an offense, whereas, no such restriction or limitation is placed upon a peace officer.

Because she had no positive knowledge of her own of the alleged assault and battery (not being present when the incident referred to in the affidavit occurred), the critical issue before this court is whether or not Yetta Naftulin had "knowledge of the facts" within the meaning of Section 2935.09, Revised Code. Since no cases have been cited by either the prosecution or defense (nor have any reported decisions been found by this court wherein the words "knowledge of the facts" in Section 2935.09, Revised Code, were interpreted), it would seem that this is a case of first impression.

Section 2935.09, Revised Code, does not provide that the

[1]The comma after the words "peace officer" would not have been inserted in the statute if the Ohio Legislature had intended the phrase "having knowledge of the fact" to apply to a peace officer.

[2]Section 2935.03, Revised Code, provides in part that an officer may arrest and detain a person "found violating" a municipal ordinance until a warrant can be obtained.

[3]5 Ohio Jurisprudence 2d, Arrest, Section 21, provides as follows on page 33 thereof: "No person except an officer has a right to make an arrest for a misdemeanor without a warrant."

private citizen must merely have "knowledge," but rather, it states that he must have "knowledge *of the facts.*" (Emphasis added.) The inclusion of these last three words in the phrase clearly indicates a legislative intent to restrict and define the type of knowledge which a private citizen must possess before being authorized to sign an affidavit. The phrase "knowledge of the facts" has a rather definite meaning in criminal law. In the general parlance of the court room, it means first hand knowledge acquired by a witness through the utilization of one of his five senses (sight, hearing, smell, taste and touch), that is to say that the witness has perceived the event, incident, or thing about which he is testifying by seeing, hearing, smelling, tasting or touching it. True enough, the word "knowledge" sometimes encompasses information which has been acquired from others. However, when the phrase "of the facts" is added to describe the type of "knowledge" required, it would seem that the entire phrase "knowledge of the facts" was intended to mean factual or first hand knowledge acquired through the use of one of the five senses.

It has been established by scientific test that once a piece of information is passed from one person to another its accuracy is significantly diminished, and as it continues to be related from one individual to another, its degree of accuracy continues to decrease in direct proportion to the number of times it is passed on, until a point is reached where there is little, or no, relationship between the truth and the story being related. In this regard, it should be emphasized that if the contention of the city prosecutor in this case were adopted, "knowledge of the facts" would not only encompass first degree hearsay, but also second degree hearsay, third degree, fourth degree, ad infinitum. To conclude that a person, who had acquired information through fourth or fifth degree hearsay, had "knowledge of the facts" would be placing a very strained construction on the words, an interpretation entirely different than the usual and ordinary meaning thereof.

The conclusion set forth above is fortified by the definitions of the words "knowledge," "fact" and "facts" in Black's Law Dictionary (Fourth Edition) and Ballentine's Law Dictionary with Pronunciations (Second Edition).

"Knowledge" is defined as follows:

"Acquaintance with fact or truth" (Black's Law Dictionary).

"Webster defines the word as being the certain perception of truth; belief which amounts to, or results in, moral certainty; indubitable apprehension; information; intelligence; as to have knowledge of a fact. *. * *" (Ballentine's Law Dictionary)

"Fact" is defined as follows:

"A thing done; an action performed or an incident transpiring; an event or circumstance; an actual occurrence. An actual happening in time or space or an event mental or physical. That which has taken place, not what might or might not have taken place." (Black's Law Dictionary)

"A deed; an act; that which exists; that which is real; that which is true." (Ballentine's Law Dictionary)

"Facts" is defined as follows:

"Actualities; what took place, not what might or might not have happened; things that in very truth have occurred." (Ballentine's Law Dictionary, 1954 Supplement)

The essence of the above definitions is that facts are "actualities," things which "in very truth have occurred," and "knowledge" is the "certain perception of truth," "indubitable apprehension." Reading the definitions of the words "knowledge" and "facts" together, it would seem that a person would not possess "knowledge of the facts" if his sole source of information was something he had been told by someone else.

Even if the phrase "knowledge of the facts" is deemed to be ambiguous,[4] the application of well established rules of statutory construction compels the conclusion that this phrase does not encompass hearsay since it is a fundamental principle of law that criminal statutes must be interpreted "* * * strictly against the state and liberally in favor of the accused." 15 Ohio Jurisprudence 2d, Criminal Law, Section 20, pages 253-254.

All of the cases cited by the city prosecutor can be easily and readily distinguished from the instant case since none in-

---

[4]This writer, however, feels that if there is any ambiguity in the meaning of the phrase "knowledge of the facts" it is only slight. Clearly, on balance, the most reasonable interpretation of this language is that it means first hand knowledge, not hearsay.

terpret the phrase in question. Furthermore, each of the cases relied upon by the prosecutor, except one, *City of Willoughby* v. *Hugebeck, supra,* were decided prior to the enactment of Section 2935.09, Revised Code. Also, the *City of Willoughby case* not only involved an entirely different issue than the one before the court in this case, the affidavit in the *Willoughby case* was signed by a police officer, not a private citizen. Although the question before the court in the instant case does not involve the validity of an affidavit executed by a police officer, it seems clear that the language of Section 2935.09, Revised Code, authorizes a police officer to file an affidavit after completing an investigation of a violation of law irrespective of whether or not the source of his information is partially, or entirely, hearsay. For example, an officer called to a scene of an auto accident would have the right to file an affidavit charging an offense after completing his investigation thereof even though he was not a witness to the event.

It is also important to note that *Miller* v. *State* (1924), 2 Ohio Law Abs. 488, *supra,* was the only case cited by the prosecutor involving the validity of an affidavit executed by a private citizen. This decision was rendered over forty years ago. In arriving at the conclusion that a private citizen could sign an affidavit based on hearsay, the court stated as follows:

"There is no restriction found in Section 13469, General Code, to the effect that persons making the affidavit must have personal knowledge or even be competent witnesses. * * *,"
It is apparent from an analysis of the above quoted language that the court in the *Miller case* predicated its decision on the specific language of Section 13469, General Code.[6] There is, however, no similarity between Section 13469, General Code, and Section 2935.09, Revised Code. As explained above, the clear language of Section 2935.09, Revised Code, compels a conclusion contrary to the one reached by the court in the *Miller case.*

*Motions granted.*

---

[6]This reference to Section 13469, General Code appears to be incorrect. The court might have meant Section 13496, General Code. In any event, there is nothing in either Section 13469 or 13496, General Code, which even remotely resembles the phrase "knowledge of the facts" contained in Section 2935.09, Revised Code.