THE STATE OF OHIO, APPELLEE, *v.* STEELE, APPELLANT.

(No. 165—Decided December 18, 1952.)

Mr. *Reeder C. Hutchinson,* for appellee.
Mr. *Edwin S. Diehl,* for appellant.

YOUNGER, J. The defendant in this case was tried in the court of G. J. P. Louys, justice of the peace, Defiance township, Defiance county, on an affidavit charging him with operating a motor vehicle while under the influence of alcohol. After conviction, and affirmance of said conviction by the Common Pleas Court of Defiance County, an appeal to this court was taken in case No. 162.█ This court reversed the judgment of the Common Pleas Court for error in not con-

sidering the bill of exceptions filed in that court on December 1, 1951, and remanded the cause for a new trial with instructions to consider the bill of exceptions "in connection with a consideration of such of the errors assigned as may be exemplified thereby."

Thereafter, on June 13, 1952, the Common Pleas Court of Defiance County heard the cause "upon the transcript and original papers of the justice of the peace court G. J. P. Louys, the assignment of errors, the bills of exceptions, and the briefs of the appellant, plaintiff-in-error, the appellee, defendant-in-error" and arguments of counsel, and, finding no error apparent upon the record to the prejudice of the appellant and that the judgment of the justice of the peace was sustained by the evidence, affirmed the judgment.

From this second judgment of the Common Pleas Court, the cause now comes to this court on appeal on questions of law.

The defendant assigns error in a number of particulars, but in his brief he expressly limits the assignments to the following issues:

1. Should the affidavit, upon which the arrest was made and the warrant to arrest was issued, have been dismissed because the officer making the affidavit was not present when any of the facts alleged occurred and had no positive knowledge of his own as to such acts?

2. Did the court err in admitting testimony over the objection of the defendant and in excluding testimony offered by the defendant to which he excepted at the time?

3. Was there sufficient evidence before the court to support the judgment of conviction?

In regard to the first issue, there is no connection between the knowledge which a police officer without a warrant must possess in order to make an arrest for the commission of a misdemeanor, and the amount of knowledge sufficient for him to have in order to sign

an affidavit for the issuance of a warrant to arrest. Police officers may arrest for the commission of a misdemeanor without a warrant only where the offense was committed in their presence. We are not here considering the civil liability of a person making an affidavit for the issuance of a warrant to arrest. So far as the sufficiency of the affidavit is concerned, in a criminal proceeding the person making it need not have any personal knowledge of the facts alleged or have seen any of the acts committed.

Therefore, the Common Pleas Court was correct in affirming the judgment of the justice of the peace in refusing to dismiss the affidavit.

In this case, however, sergeant Grant, who signed the affidavit, did have some personal knowledge of the facts. He was called to the scene of the accident and arrived shortly after it occurred. The defendant and his automobile were still there. Grant talked to the defendant, observed the position of his automobile after the accident, and observed his speech, his actions, and his manner of walking.

The second issue is upon the admission and rejection of evidence by the justice of the peace. We have carefully read the entire testimony before the justice and find the second assignment of error to be without merit.

The third issue is that the evidence is insufficient to support a verdict of guilty.

The testimony of several witnesses for the state was to the effect that immediately after the collision and at the scene the defendant was confused and bewildered; that he did not talk coherently; that he had a ''weaving,'' ''staggering,'' ''swaying'' or ''unsteady'' walk; that he had a ''strong odor of alcohol on his breath''; and that ''he was under the influence of liquor.''

The defendant testified that he had ''two or three

bottles of beer'' several hours before the accident, that he had a diabetic condition and on his physician's orders had used no hard liquor for over five years, and that, at the time, he was operating his car ''in a normal condition.'' A tavern keeper testified that when the defendant left the tavern an hour or so before the accident he was in a normal condition.

Under this conflicting testimony it was the duty of the trier of the facts, which in the instant case was the justice of the peace, to determine which witnesses to believe. He believed the witnesses for the prosecution and we cannot say that such evidence, if believed to be true, is insufficient to sustain a conviction for driving while under the influence of alcohol.

There are many and various degrees of being under the influence of alcohol, ranging all the way from the puritanical definition of ''ever so slight,'' such as is received from a small drink of fermented fruit juice or a small glass of beer or even a teaspoonful of whiskey for medicinal purposes to the more rugged or the famous drunkard's definition:

> ''Drunk is not he, who from the floor
> Can rise again and still drink more.
> But drunk is he who prostrate lies
> Unable either to drink or rise.''

It is as equally absurd to permit the state to obtain a conviction on the first definition as it is to require it to prove that the accused was in the sad state shown by the latter. Neither of such definitions certainly was the legislative intent when the present statute was enacted.

So far as we are aware, no clear-cut expression of what constitutes ''under the influence'' has been promulgated by the courts of this state, and there certainly ought to be some common-sense rule to use in dealing with this important and increasingly menacing problem.

In our opinion, being "under the influence" of alcohol or intoxicating liquor means that the accused must have consumed some intoxicating beverage, whether mild or potent, and in such a quantity, whether small or great, that the effect thereof on him was to adversely affect his actions, reactions, conduct, movements or mental processes, or to impair his reactions, under the circumstances then existing so as to deprive him of that clearness of the intellect and control of himself which he would otherwise possess.

It is not necessary to find the accused in a high state of excitement, enthusiasm, elation, frenzy or delirium, or even pugnacious to find him "under the influence," as it is common knowledge that some persons react to the influence of liquor by becoming dull, sleepy, dejected or sad. And it is common knowledge also that different people react differently at different times.

Physical conditions, mental strain, lack of food, and tempermental variations in individuals affect in varying degrees the tolerance of the same individual to alcohol as these conditions increase or decrease with such individuals from time to time. So, it is important that the effect on *his* actions and reactions under the circumstances *then* existing be borne in mind. It is not how many drinks of this or that the accused has had. A drink is not the same to all persons. There is a difference between a sip and "three fingers," yet each may be some person's "drink." It is not a question of how much liquor would have such-and-such an effect upon an ordinary person. The question is what effect did the liquor the accused consumed have on him at the time under consideration.

The Superior Court of Pennsylvania in *Commonwealth* v. *Buoy,* 128 Pa. Sup. Ct., 264, 193 A., 144, announced a rule largely in conformity with our opinion herein expressed, as follows:

"The Commonwealth was not obliged to prove that appellant was so intoxicated or drunk that he could not properly function or safely drive a car. The statute does not require proof of intoxication. All that the statute requires is that the appellant be under the influence of intoxicating liquor while operating a motor vehicle. * *· * The expression, 'under the influence of intoxicating liquor,' covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in intoxicating liquors, and which tends to deprive one of that clearness of intellect and control of himself which he would otherwise possess."

Applying the tests we have set forth above to the testimony of the state's witnesses that immediately after the collision and at the scene the defendant was confused and bewildered; that he did not talk coherently; that he had a weaving, staggering, swaying or unsteady walk; and that he had a strong odor of alcohol on his breath, we must conclude that this testimony, if believed, as it was by the trier of the facts, showed that the amount of alcohol consumed by the defendant, whether mild or potent, much or little, was such that it did then adversely affect his actions and impair his reactions. Such testimony is sufficient to warrant a conviction.

*Judgment affirmed.*

MIDDLETON, P. J., and GUERNSEY, J., concur.