Argued September 6, affirmed October 17, 1963

## STATE OF OREGON *v.* ROBINSON
### 385 P. 2d 754

*Reginald S. Williams*, Salem, argued the cause for the appellant. With him on the brief were Lawrence Osterman and Dale Pierson, Salem.

*Gary D. Gortmaker,* Deputy District Attorney, Salem, argued the cause for respondent. With him on the brief was Hattie Bratzel Kremen, District Attorney, Salem.

Before McAllister, Chief Justice, and Rossman, Sloan, Goodwin and Lusk, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the circuit court which adjudged him guilty of the crime of driving a motor vehicle while under the influence of intoxicating liquor in violation of ORS 483.992 (2). The penalty was a fine of $300.

ORS 483.992 (2) provides:

"Any person who, while being under the influence of intoxicating liquor, barbiturates or narcotic drugs, drives any vehicle upon any highway, street or thoroughfare within this state, shall be punished, upon conviction, by imprisonment in the county or municipal jail for not more than one year, or by fine of not more than $1000 or both."

November 26, 1961, the day defendant was arrested, he and his wife drove from their home in Molalla to Salem at about 10:30 o'clock in the evening. Defendant testified he had a headache and went to a tavern called the Malt Shop where he "knew he could buy some Anacin." He spent approximately one hour in the Malt Shop where he purchased the Anacin and had two drinks, each of which consisted in part of whiskey.

The defendant drove the car as he and his wife left the Malt Shop about midnight for home. He testified that as they were passing an establishment in Salem a car pulled into their lane and forced him to apply his brakes hurriedly. The attendant screech of brakes and tires attracted the attention of two police officers who thereupon pursued the defendant for approximately a mile. At that point they stopped him and arrested him for driving while under the influence of intoxicating liquor.

The two officers testified that the defendant drove his car in an erratic manner, that when he stepped

from his car he was unsteady, his speech was thick and slurred and a strong odor of alcohol issued from him.  The defendant spent the night in the county jail.  The two arresting officers and the jailer testified that in their opinion the defendant was intoxicated.

Appellant (defendant) offered as explanation of his slurred speech that he had dentures that did not fit properly.  He attributed his unsteady gait to a support which he wore on his back to correct an injury.  He earns his livelihood by driving a logging truck.

Defendant-appellant presents four assignments of error.  The first three concern jury instructions given or refused, and the fourth challenges the constitutionality of a statutory suspension of his driving privilege.

The office of the instructions to the jurors is to inform them as to the law of the case so that they will know the governing rules.  When a charge to the jury is examined for error the proper inquiry is how the instruction would naturally be understood by the average people who compose juries.  If the instruction is correct as to the law and is not couched in phraseology which is, by chance, misleading, the court has committed no error in giving it instead of one of like nature requested by the appellant.  The requested instructions are advisory, and the trial judge need not accept any of them even though it is material and is correctly worded if he gives another which is likewise correct.

Appellant's first assignment contends error was committed in refusing to give a requested instruction which defined the term "reasonable doubt."  The trial judge charged the jury:

> "By the term reasonable doubt is meant a conscious uncertainty in the mind of the juror respecting the guilt of the accused.  This does not require

that all doubt whatever be removed, but the evidence must establish the truth of the fact to a moral certainty."

Many courts have decried attempts to define the term "reasonable doubt." They point out that the term is so commonly known and understood that it requires no embellishment; it is questionable whether a definition can add much to what the words themselves denote. *Snell v. State*, 179 Ga 52, 175 SE 14; *People v. Malmenato*, 14 Ill 2d 52, 150 NE2d 806; *State v. Wilcox*, 132 NC 1120, 44 SE 625; *Choate v. State*, 19 Okla Cr 169, 197 P 1060; *State v. Aughtry*, 49 SC 285, 26 SE 619; *Holmes v. State*, 68 Tex Cr 17, 150 SW 926; *State v. Costa*, 78 Vt 198, 62 A 38; *McCoy v. Commonwealth of Virginia*, 133 Va 731, 112 SE 704; *Swopshire v. Commonwealth of Kentucky*, 246 Ky 593, 55 SW2d 356; *People v. Cary*, 245 Ill App 100; *State v. Andrews*, 86 RI 341, 134 A2d 425; *Miles v. U. S.*, 103 US 304, 26 L Ed 481; *Dunbar v. U. S.*, 156 US 185, 39 L Ed 390, 15 S Ct 325.

■ While it is doubtful if a definition is necessary, attempts to define the term are not error for that reason. In this state the practice prevails for the trial court to instruct the jury as to the meaning of reasonable doubt. Many definitions have come before this court for review, and we have in the past honored definitions which, like the one given in this case, equate "reasonable doubt" with "establishing the truth to a moral certainty." *State v. Abrams*, 11 Or 169, 8 P 327; *State v. Morey*, 25 Or 241, 36 P 573; *State v. Roberts*, 15 Or 187, 13 P 896. In *State v. Roberts*, supra, the appellant's request for an instruction containing the phrase "establishing the truth to a moral certainty" had been refused. We affirmed the circuit court's ruling stating that although the requested in-

struction was free from objection, the charge given by the court was, in effect, the same.

■ The instruction given by the trial judge and the one refused advance essentially the same definition of "reasonable doubt." The trial judge's instruction informed the jurors succinctly and clearly as to the degree of proof required to find defendant guilty. The first assignment of error is without merit.

Appellant's second and third assignments of error relate to the same matter and may be considered together. He challenges, in his second assignment, the refusal of the trial judge to give this requested instruction:

> "A person may be said, as it applies to the charge contained in this complaint, to be intoxicated or in a state of intoxication if intoxicating liquor has so far affected his nervous system, brain or muscles as to impair to an appreciable degree his ability to operate an automobile in the manner than [sic] [that] an ordinarily prudent and cautious person in full possession of his faculties would operate or drive a similar vehicle under like circumstances."

In his third assignment he contests the validity of this instruction given by the court:

> "You are instructed that by [sic] the term of under the influence of intoxicating liquor covers not only all the well known and easily recognized conditions and degrees of intoxication, but any perceptible abnormal mental or physical condition which is the result of indulging in any degree of intoxicating liquors and which perceptibly tends to deprive the use of that clearness of intellect and control of himself which he would otherwise possess.
>
> "You are instructed that the elements involved in a charge of driving a motor vehicle while under

the influence of intoxicating liquor are that at the time and place alleged, the defendant operated a motor vehicle upon a public highway in the County of Marion while he was under the influence of intoxicating liquor to some perceptible degree."

Appellant urges in opposition to the court's instruction and in support of his own that there should be no distinction between the definition of the term "under the influence of intoxicating liquor" in civil and in criminal actions. His definition is taken largely from *Glascock v. Anderson*, 198 Or 499, 257 P2d 617. This case involved an action for damages for personal injuries pursuant to OCLA § 115-1001 (ORS 30.115) commonly known as the "guest passenger statute." Plaintiff alleged the driver was intoxicated and unable to properly operate the automobile. The trial judge instructed the jury:

"* * * A person is intoxicated within the meaning of the guest statute when he is under the influence of intoxicating liquor to such an extent as to tend to prevent him from exercising the care and caution which a sober and prudent person would have exercised under the same or similar circumstances."

Appellant argues it is unjust to convict a motorist of driving while under the influence of intoxicating liquor by requiring the state to prove only that the accused was under the intoxicating liquor's influence to a perceptible degree, while on the other hand, if a motorist is involved in an auto accident and injures someone, the plaintiff is required to show not only that the motorist was under the influence of intoxicating liquor but also that the liquor had made him incapable of operating his vehicle as a reasonably prudent sober person would.

■ This argument is unmindful of the basic purpose of ORS 483.992. This statute is designed, through the punishment of offenders, to deter persons from driving on the public highways when they have voluntarily allowed their physical coordination and mental faculties to become hampered and dulled by inoxicating liquor. The test whether a motorist is driving under the influence of intoxicating liquor is not his fitness or unfitness to drive an automobile but, rather, whether he has imbibed to an extent that his mental and physical condition is deleteriously affected. In this condition he increases the danger of accident that already inheres in the movement of automobiles in increasing numbers on our highways.[1]

■ In light of the enlarging number of automobiles using our highways, the expanding number of arrests for driving while under the influence of intoxicating liquor, and the increasing number of fatalities in automobile accidents involving drinking drivers, the courts should not, in the absence of compelling reasons, liberalize the law in favor of those accused of this offense. To give vitality to appellant's definition would place a needless hurdle in the path of the state, impeding its work to make the highways safer.

■ The trial judge, in his charge to the jury, correctly stated the law. We are not impelled by appel-

---

[1] Accident Facts—1960 Edition; National Safety Council, p. 50
"One out of every five drivers involved in a fatal motor-vehicle accident had been drinking."
"Nearly one out of every three fatal motor-vehicle accidents involved a drinking driver."
"About 10,000 of the 32,000 fatal motor-vehicle accidents in 1959 involved drinking drivers."
Crime in the United States, "Uniform Crime Report;" John Edgar Hoover, FBI p. 92, 93. In 1962 there were 176.6 arrests for driving while intoxicated for every 100,000 population. This is an increase of 3.4 per cent over 1961.

lant's reasoning to depart from the definition of this offense propounded in *State v. Noble,* 119 Or 674, 250 P. 833. Noble was charged with driving on a public highway under the influence of intoxicating liquor. We said in that case, speaking through Justice RAND:

> "The state was not bound to prove, that the defendant was drunk or intoxicated, but only to show that he was under the influence of intoxicating liquor to some perceptible degree."

It is not essential to propound an intricate definition of "under the influence of intoxicating liquor" to acquaint the jurors with its import. The second and third assignments of error lack merit.

■ We do not believe that the defendant's appeal presents an issue as to the validity of ORS 482.430, nor do we believe that the revocation of a driver's license is punishment or is intended to be punishment. This case is governed by ORS 483.992 (2) which is set forth in the second paragraph of this opinion. By reverting to it it will be observed that it makes no provision for the revocation of anyone's operator's license. So far, the defendant has not been charged with anything under ORS 482.430. That statute does not authorize the court, in a case of this kind, to revoke an operator's license. The power to do so is lodged, by ORS 482.430 (2), in the Department of Motor Vehicles.

ORS 482.430 (2), referring to the Department of Motor Vehicles (ORS 482.010 (3)), says:

> "The department forthwith shall suspend any person's permit or license to operate motor vehicles upon receiving a record of the conviction of such person of driving while under the influence of in-

toxicating liquor or narcotic drug. The period of suspension shall be:

"(a)  First conviction, 90 days.

"(b)  Second conviction, one year.

"(c)  Third or subsequent conviction, three years."

It is seen from the foregoing that it is not the trial judge but the Department of Motor Vehicles that makes the suspension. See *Commonwealth v. Harris*, 278 Ky 218, 128 SW2d 579, and *People v. O'Rourke*, 124 Cal App 752, 13 P2d 989. It is not claimed that any suspension has occurred. We are satisfied that this appeal has not brought to the court a suspension or any phase of it.

The assignments of error possess no merit. The judgment of the circuit court is affirmed.