THE STATE OF OHIO, APPELLEE, *v.* HARDY, APPELLANT.

[Cite as State v. Hardy (1971), 28 Ohio St. 2d 89.]

(No. 71-279—Decided November 26, 1971.)

*Mr. Michael F. Vaccaro*, for appellee.
*Messrs. Williams & Howell* and *Mr. Paul V. Howell*, for appellant.

DUNCAN, J.   We forego comparison of *Toledo* v. *Starks, supra*, and the case at bar to discern whether they conflict, but it is apparent that there exists a general similarity of the problem in both cases regarding the jury instructions on driving while under the influence of alcohol.   We are called upon to determine whether the trial judge, in instructing a jury, committed error prejudicial to the defendant.

In the instant case, we believe the trial court's charge to be erroneous and prejudicial to the defendant for the reasons appearing hereinafter.

The trial judge in instructing the jury made two statements concerning the meaning of the words "under the influence of alcohol," the first of which is as follows:

"* * * Under the influence of alcohol covers not only all the well known and easily recognized conditions and degrees of intoxication, but any abnormal mental or physical condition which is the result of indulging in any degree in the consumption of alcohol and which tends to deprive the one so using it of the clearness of intellect and control of himself which he would otherwise possess.   No matter what stage of intoxication a person may be in, if he drives a vehicle upon the public road, he becomes a menace to the public and subjects himself to the penalties of the statute."

In our view the above-quoted part of the charge is not erroneous.   However, the court charged further, in part:

"* * * Now further in connection with the charge against the defendant, I believe that it is only proper that the court define to you what is meant by being under the influence of alcohol, the language of the statute that I read to you. In that connection, let me say the expression 'under the influence of alcohol' means exactly what it says and that is that some alcohol must have been drunk by the person, the amount being immaterial, but the effect of which caused some influence on that person at the time and place alleged in the affidavit. That is a very short definition, but very expressive and very definite."

Appellant contends, and we agree, that this part of the trial court's instruction is erroneous.

In instructing a jury concerning the statutory meaning of "under the influence of alcohol" it is not sufficient to charge a jury that the alcohol drunk by the defendant need have caused only *some* influence on him. Such a charge would include and make actionable such influences as the miniscule alteration of an accused's heart beat, breathing rate, perspiration, salivation—or even humor and good spirits. None of those, alone, would necessarily indicate a state of intoxication, or necessarily adversely affect a person's physical or mental capabilities. A conviction satisfying such a vague standard would only have a remote relationship to the intended purpose of the statute, which we believe was enacted to protect persons and property from drivers whose physical and mental ability to act and react are altered from the normal because of the consumption of alcohol. A criminal statute must be applied so as to have a reasonable relationship to its purpose in order to fit within constitutional requirements of due process of law.*

The part of the trial court's charge, that the alcohol consumed must "have *some* influence on the person at the time and place alleged in the affidavit" (emphasis supplied), ignores the essential requirement that the "influ-

---

*Fifth and Fourteenth Amendments to the Constitution of the United States; Section 16, Article I of the Constitution of Ohio.

ence" effect some deprivation of clearness of intellect and control which one would otherwise possess.

Appellant contends that the infirmity of the court's charge, as discussed above, is incurable even by the inclusion of what he regards as the proper definitive language of "under the influence of alcohol," used in *State* v. *Steele* (1952), 95 Ohio App. 107; citing the holding in *Toledo* v. *Starks* (1971), 25 Ohio App. 2d 162.

In determining the question of prejudicial error in instructions to the jury, the charge must be taken as a whole, and the portion that is claimed to be erroneous or incomplete must be considered in its relation to, and as it affects and is affected by the other parts of the charge. If from the entire charge it appears that a correct statement of the law was given in such a manner that the jury could not have been misled, no prejudicial error results. See *State* v. *Porter* (1968), 14 Ohio St. 2d 10; *Centrello* v. *Basky* (1955), 164 Ohio St. 41.

After analysis of the entire charge, which includes consideration of any remedial impact the nonerroneous part might have upon the erroneous, we are convinced that the erroneous language used in the latter part of the charge highlights and emphasizes the erroneous to such an extent that the total charge visits prejudice on the defendant.

In the present case, the trial court read to the jury the erroneous poorly worded definition of "under the influence of alcohol" which had its apparent genesis in *Masoncup* v. *State* (1933), 47 Ohio App. 32. That definition contains two sentences which could reasonable be expected to lead a jury to believe that this portion of the charge was the controlling definition of "under the influence of alcohol." It must be remembered that when originally given to the jury in *Masoncup*, this was the only instruction given as to the definition of being under the influence of alcohol. In our view, both the first and last sentences of the erroneous part of the charge, as quoted, imply that this part of the charge contains the sole definition of being under the influence. The first sentence of this disputed statement is, in part: "I believe it is only proper that the court *define* to you

what is meant by being under the influence of alcohol.'' The word ''define'' connotes that which follows will be, unlike the language that preceded, the definitive statement of being ''under the influence of alcohol.'' Moreover, the preceding (nonerroneous) part of the instruction uses no such clear language as ''define,'' but instead generally states what ''under the influence of alcohol'' *covers.* ''Define,'' being the stronger of the two terms, could reasonably lead a jury to believe that the second part contains the precise and controlling instruction.

The second unfortunate carry-over of the *Masoncup* language involves the entire last sentence: ''That is a very short definition, but very expressive and very definite.'' Coupled with the similar inference created by the first sentence, the resultant impression is that the erroneous (*Masoncup*) language was the definitive statement of the law.

Stated differently, the nonerroneous part of the charge is stated less prominently and clearly than the erroneous, and the correct instruction appears to be a general statement while the erroneous part of the charge appears as a specific, controlling definition of ''under the influence of alcohol.'' See *Marcoguiseppe* v. *State* (1926), 114 Ohio St. 299, 301; *Montanari* v. *Haworth* (1923), 108 Ohio St. 8, 13; *Pittsburgh, Cincinnati and St. Louis Ry. Co.* v. *Krouse* (1876), 30 Ohio St. 222; *Pendleton Street Rd. Co.* v. *Stallmann* (1871), 22 Ohio St. 1.

Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded to the Municipal Court for further proceedings according to law.

*Judgment reversed.*

SCHNEIDER, CORRIGAN and STERN, JJ., concur.
O'NEILL, C. J., HERBERT and LEACH, JJ., dissent.

HERBERT, J., dissenting. I cannot concur that the second part of the trial court's charge to the jury, as adopted from *Masoncup* v. *State* (1933), 47 Ohio App. 32, is erroneous.

94

It is now generally acknowledged that a person who is to "some" extent "under the influence of alcohol" is less able, either mentally or physically or both, to exercise the clear judgment and steady hand necessary to control an automobile with safety to himself and the general public. The terrible toll taken, both in personal injuries and property damage, by drivers who "drink and drive," is reason enough for the General Assembly to determine that any person who of his own free will voluntarily lessens his ability to operate a motor vehicle by the use of alcohol, should, while in such condition, be excluded from the use of such vehicles upon the public highway.

The legislative branch has placed no limitation upon the degree of "influence" required. As the Court of Appeals stated in its decision:

"We hold the legislative prohibition runs not against the degree of the influence but against the fact of its existence contemporaneous with the operation of the vehicle."

By holding that the *Masoncup* instruction is erroneous, the majority has left Ohio courts with the language of either *State* v. *Steele* (1952), 95 Ohio App. 107, or *Toledo* v. *Starks* (1971), 25 Ohio App. 2d 162, as a basis for jury instructions on the meaning of "under the influence." In *Steele,* the language was:

"The words, 'under the influence of alcohol,' * * * mean that the accused must have consumed some intoxicating beverage in such quantity that its effect on him was to adversely affect his actions, reactions, conduct, movements or mental processes in such manner as to deprive him of that clearness of intellect and control of himself which he would otherwise have possessed under the circumstances then existing."

And in *Starks*:

"The condition in which a person finds himself after having consumed some intoxicating beverage in such quantity that its effect on him adversely affects his actions, reactions, conduct, movement or mental processes or impairs his reactions to an appreciable degree, thereby lessening his ability to operate a motor vehicle."

Among other problems, such instructions appear to compel the state to prove, beyond a reasonable doubt, the normal, "un-influenced" driving ability of the accused, and our trial courts to undertake the prodigious feat of explaining to a jury the *legalis implicatio* of "appreciable."

The Court of Appeals, in the case at bar, keenly noted:

"We hold the public has a legitimate interest in clearing the highways of drivers under the influence of alcohol. This means getting such drivers off the highway *before* all reasonable doubt as to their impaired ability to drive has been extinguished by objective evidence of their bad driving.

"If the legitimate interests of the people are to have any meaningful protection at all, the driver under the influence must be cleared from the highway before his impaired ability to drive has become spectacular.

"The rule contended for by appellant would, in practical effect, deny protection to the public in most cases until after an accident."

The *Masoncup* instruction is purposely broad, but it is by no means unique. Other jurisdictions use similar phraseology which allows little leeway in the definition of "under the influence." See *State* v. *Noble* (1926), 119 Ore. 674, 250 P. 833; *State* v. *Robinson* (1963), 235 Ore. 524, 385 P. 2d 754; *Hasten* v. *State* (1929), 35 Ariz. 427, 280 P. 670; *Noland* v. *Wootan* (1967), 102 Ariz. 192, 427 P. 2d 143; *Steffani* v. *State* (1935), 45 Ariz. 210, 42 P. 2d 615; *State* v. *Storrs* (1933), 105 Vt. 180, 163 A. 560; *State* v. *Hedding* (1945), 114 Vt. 212, 42 A. 2d 438; *Ackerman* v. *Kogut* (1951), 117 Vt. 40, 84 A. 2d 131; *State* v. *Bradbury* (1955), 118 Vt. 380, 110 A. 2d 710; *State* v. *Sisneros* (1938), 42 N. M. 500, 82 P. 2d 274; *State* v. *Hurd* (1940), 5 Wash. 2d 308, 105 P. 2d 59; *Snyder* v. *Denver* (1951), 123 Colo. 222, 227 P. 2d 341; *State* v. *Bryce* (Me. 1968), 243 A. 2d 726; *State* v. *Chester* (Mo. 1969), 445 S. W. 2d 393; Erwin, Defense of Drunk Driving Cases (3 Ed.).

I cannot agree, as the majority believes, that "a conviction satisfying such a vague standard would have only a remote relationship to the intended purpose of the stat-

ute," and, thus, run afoul of the constitutional requirements of due process of law.

In enacting R. C. 4511.19, our General Assembly demands that "No person who is under the influence of alcohol * * * shall operate any vehicle * * * within this state." They did not specify the extent to which such influence must go. If, as I believe, this was purposely done, then the *Masoncup* instruction is exceedingly relevant to the intent of the statute.

As the court below found: "One purpose of R. C. 4511.19 is to give the government the right to intervene on behalf of the traveling public before the drinking driver has become a manifest menace."

Even if it could be conceded, however, that the *Masoncup* instruction is erroneous, its presence in this case does not constitute prejudicial error. Appellant was given a chemical test, the results of which were properly in evidence, that indicated the concentration of alcohol in his blood to be twenty-two hundredths of one percent by weight. The arresting officer testified that appellant had bloodshot eyes, very slurred speech, and smelled of alcohol. Further, appellant had been observed driving left of center just before the arrest.

Hence, even if the majority be correct in their conclusions, it seems inescapable that the error to which they allude was "harmless beyond a reasonable doubt," and should not serve as a vehicle for the reversal of this cause. *Chapman* v. *California* (1967), 386 U. S. 18, 17 L. Ed. 2d 705; *Harrington* v. *California* (1969), 395 U. S. 250, 23 L. Ed. 2d 284; *State* v. *Tabasko* (1970), 22 Ohio St. 2d 36, 257 N. E. 2d 744.

O'NEILL, C. J., and LEACH, J., concur in the foregoing dissenting opinion.