DECISION AND JUDGMENT ENTRY
This appeal comes to us from the Lucas County Court of Common Pleas. There, appellant was found guilty of kidnaping and felonious assault, following the return of a jury verdict. Because appellant's conviction was supported by the evidence and the judge properly charged the jury and sentenced appellant in conformity with the law, we affirm.
Despite a nineteen year age difference and the disapproval of her children, Marsha Young became romantically involved with appellant, Daryl Woodson, in the summer of 1997. On the evening of November 10, 1997, Young and her children, William and April Evans, were with appellant at his Toledo apartment. Also present was an individual named "Cat's Eye." At some point appellant and Cat's Eye left, ostensibly to go to the store. When appellant returned, fifteen minutes later, he was alone. Appellant went directly to a rear bedroom where Young was lying down.
Young later testified that when appellant came into the room he was angry and accused her of infidelity. According to Young, appellant choked her. He then obtained a pistol with which he repeatedly struck her. When Young called for her daughter, appellant, according to the testimony of both Young and April Evans, opened the door and punched April Evans in the face. When April Evans began to fight back, appellant drew the gun and said, "bitch, I'll kill you."
William Evans testified that when he came to his sister's aid, appellant pistol whipped him, cutting a gash in his head which later required several stitches. Eventually, both of Young's children escaped the apartment and called police.
Meanwhile, Marsha Young testified that appellant continued to beat her, knocking out one of her teeth. Appellant then dragged Young by the hair out of his apartment and through a series of city alleys to another apartment. Appellant disposed of the first gun somewhere in transit.
In the second apartment, appellant obtained a second gun. He then, according to Marsha Young, repeatedly raped and sodomized her, continuously threatening to kill her. The next morning, however, appellant walked Young to a nearby convenience store, bought her some cigarettes and walked away, waiving goodbye.
Young used a pay phone to call her children. She then walked home where she began to bathe. Shortly after getting in the tub, one of Young's cousins, a nurse, advised her to get medical attention. Young then went to a hospital emergency room where she was treated and a "rape kit" administered. The rape kit would later prove negative.
Appellant was arrested and charged with two counts of felonious assault, one count of rape and one count of kidnaping, all counts carried firearm specifications.
The matter proceeded to a jury trial at which appellant was convicted of two counts of felonious assault and one count of kidnaping, all with firearm specifications. He was acquitted of rape. At a post trial hearing, appellant was found to be a sexually oriented offender and sentenced to five year terms of incarceration for each of the felonious assaults, ten years for the kidnaping and one year for each of the three gun specifications. These sentences were ordered to be served consecutively.
Appellant now brings this appeal in which he sets forth the following five assignments of error:
"First Assignment of Error
 "THE TRIAL COURT ERRED IN SENTENCING APPELLANT TO THREE, CONSECUTIVE MANDATORY ONE YEAR PRISON TERMS WHEN THE GUN SPECIFICATIONS SHOULD HAVE BEEN MERGED AND THUS VIOLATED APPELLANT'S RIGHTS UNDER THE UNITED STATES AND OHIO CONSTITUTION.
"Second Assignment of Error:
 "THE TRIAL COURT ERRED IN ITS JURY INSTRUCTIONS AND THE SUPPLEMENTAL CLARIFICATION OF THE LAW TO THE JURY DURING THEIR DELIBERATION, OVER APPELLANT'S OBJECTION PREJUDICED APPELLANT BY LEADING TO HIS KIDNAPING CONVICTION IN VIOLATION OF HIS RIGHT TO DUE PROCESS UNDER THE UNITED STATES OHIO CONSTITUTIONS.
"Third Assignment of Error:
 "THE TRIAL COURT COMMITTED ERROR WHEN IT FOUND APPELLANT TO BE SEXUALLY-ORIENTED OFFENDER AFTER HE WAS FOUND NOT GUILTY OF RAPE AND WHEN NO EVIDENCE WAS PRESENTED THAT APPELLANT HAD A HISTORY OF SEXUALLY RELATED OFFENSES OR IS LIKELY TO REPEAT THE OFFENSE AND THUS THE STATUTE IS NOT RATIONALLY RELATED TO A VALID STATE'S INTEREST.
"Fourth Assignment of Error:
 "THE TRIAL COURT ERRED IN CONVICTING APPELLANT FOR KIDNAPING BECAUSE THE VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND WHEN THE JURY'S VERDICTS FOR RAPE AND KIDNAPING WERE INCONSISTENT.
"Fifth Assignment of Error:
 "THE STATE'S EVIDENCE WAS INSUFFICIENT AS A MATTER OF LAW ON THE ELEMENT OF OPERABILITY OF A FIREARM WHICH PREJUDICED APPELLANT DUE TO THIS SENTENCE OF THREE CONSECUTIVE ONE-YEAR FIREARM SPECIFICATION."
Subsequent to the filing of his initial brief, but before appellee's brief was filed, appellant, with leave of the court, filed the following "SUPPLEMENTAL ASSIGNMENT OF ERROR."
 "THE TRIAL COURT ERRED BY SENTENCING APPELLANT TO THE MAXIMUM TERM FOR KIDNAPING AND FOR IMPOSING CONSECUTIVE PRISON TERMS FOR ALL THREE COUNTS WHEN THE TRIAL COURT FAILED TO MAKE SUFFICIENT FINDINGS OF FACT AND THE REASONS FOR IMPOSING THE OFFENSES IN VIOLATION OF THE SENTENCING GUIDELINES AND OHIO REVISED CODE § 2929."
We shall reserve until later our discussion of the sentencing issues.
 I.
In his second assignment of error, appellant focuses on questions concerning the elements of kidnaping which surfaced during the jury's deliberations. Appellant was indicted for violating R.C. 2905.01(A)(4) which proscribes asportation of a person by force or threat for the purpose of, "* * * engag[ing] in sexual activity * * *." In its charge to the jury, the trial court did not separately define "purpose" when discussing the elements of kidnaping, although it did define the word when discussing the elements of rape. Appellant did not object to the charge, but now contends that the court's failure to repeat the definition of "purpose" constituted plain error.
This error was exacerbated, according to appellant, by the court's handling of a question raised by the jury during deliberations. The jury sent a communication to the court stating, "Request clarification as to why the count of kidnaping has to involve the element of `with purpose to engage in sexual activity[.]'" The court responded by asking the jury to clarify the question. The jury replied, "* * * in order to be found guilty of kidnaping, did [appellant] have to leave [his apartment] with the purpose to engage in sexual conduct."
The defense objected to any further instruction, and urged the court to reiterate its original instruction. The court overruled the objection and called in the jury, stating,
 "* * * you must find beyond a reasonable doubt, or the State must have proved to you beyond a reasonable doubt that the defendant did restrain Marsha Young of her liberty or means to restrain in compliance with that element of restraint or removal at some point in time between [appellant's apartment] and the time she was released, and that will be the answer to your question."
After a brief bench conference, the court continued,
 "To even clarify that further, at some point in time between [appellant's apartment] and the time that she is released, the State must prove beyond a reasonable doubt that the defendant did restrain Marsha Young of her liberty with the purpose to engage in sexual activity."
Appellant contends that the court's failure to restate the definition of "purpose" in its kidnaping charge was error. We do not agree. Jury instructions must be considered as a whole and that part of the instruction claimed to be incomplete must be considered in relation to the other parts of the charge. State v.Hardy (1971), 28 Ohio St.2d 89.92.
In this case, the definition of "purpose" was properly included in the instruction and a fair reading of the jury's question and clarification provides no insinuation that the jury did not understand what the phrase "the purpose of sexual activity" meant. The question centered on when such "purpose" must have been formed. The answer, properly provided by the court, was at any time when the victim was restrained of her liberty. Accordingly, appellant's second assignment of error is not well-taken.
 II.
In his fourth and fifth assignments of error, appellant claims that his conviction was against the manifest weight of the evidence because of the inconsistency in the jury's verdict; that is, while appellant was acquitted on a rape charge, he was convicted of a kidnaping charge which contained a "sexual purpose" element. Appellant also asserts, in his fifth assignment of error, that there was insufficient evidence of operability to sustain his firearm specification.
In a criminal context, a verdict or finding may be overturned on appeal if it is either against the manifest weight of the evidence or because there is an insufficiency of evidence. In the former, the appeals court acts as a "thirteenth juror" to determine whether the trier of fact lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered. State v. Thompkins (1997),78 Ohio St.3d 380, 387. In the latter, the court must determine whether the evidence submitted is legally sufficient to support all of the elements of the offense charged. Id. at 386-387. Specifically, the court must conclude that the state presented evidence which, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The test is, viewing the evidence in a light most favorable to the prosecution, could any rational trier of fact have found the essential elements of the crime proven beyond a reasonable doubt. Id. at 390 (Cook, J. concurring); State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. See, also, State v. Eley (1978),56 Ohio St.2d 169; State v. Barns (1986), 25 Ohio St.3d 203.
On the manifest weight question, appellant first argues that the testimony of Marsha Young is simply unbelievable. This is a credibility question to which great deference is given the trier of fact. A judgment of conviction will not be reversed where the record shows that a verdict of guilty was returned on sufficient evidence and there was no prejudicial error in the trial or the instructions. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one and two of the syllabus. The testimony of Marsha Young and her children, if believed, establish the elements of the crimes of which appellant was convicted. Furthermore, as we have discussed elsewhere in this decision, we find no prejudicial error in the court's conduct of the trial or its instructions to the jury.
With respect to the purported inconsistencies between the rape acquittal and the conviction for kidnaping, there is no requirement for consistency between different counts. State v.Adams (1978) 53 Ohio St.2d 223, paragraph two of the syllabus. Here, the jury could well have concluded that the state had presented insufficient evidence to support the rape conviction, but enough to satisfy the "sexual purpose" element of the kidnaping charge. Such a finding would be consistent with the verdict.
Concerning the operability of a firearm, appellant properly points out that, in order to sustain the specification, the state has the burden of proving that a firearm was operable or could readily have been rendered operable at the time of the offense. State v. Gaines (1989), 46 Ohio St.3d 65, 69. However, in making the determination as to whether the state met its burden, the trier of fact may consider all the facts and circumstances surrounding the crime, including any implicit threats made by the person in control of the firearm. State v.Tompkins (1997), 78 Ohio St.3d 380, paragraph one of the syllabus.
In this matter, testimony indicated that appellant pointed the gun at William Evans at one point and ordered him to go upstairs. He also repeatedly threatened to kill Marsha Young while holding the gun. In our view, these threats go beyond the implicit to the express and could form a basis for a finding that a weapon was operable, if believed by the trier of fact.
Accordingly, appellant's fourth and fifth assignments of error are not well-taken.
 III.
In his third assignment of error, appellant contends that he should not have been adjudicated a sexually oriented offender when he was acquitted of the rape charge and there was no evidence adduced that he had a history of sexually related offenses or is likely to repeat the offense.
In essence, appellant argues that his classification as a sexually oriented offender is based only on his kidnaping conviction being "with the purpose to engage in sexual contact." Appellant contends, "* * * this was wrong."
R.C. 2950.10(D)(2)(c)(3), defines a sexually oriented offense as, inter alia, a "violation of [R.C. 2905.01(kidnaping)] that is committed with a purpose to gratify the sexual needs or desires of the offender."
Under R.C. Chapter 2950, anyone who has been convicted of any sexually oriented offense is automatically classified as a sexually oriented offender and is subject to the ongoing conditions of that chapter. State v. Cooks (1998), 83 Ohio St.3d 404,409; State v. Parker (Sept. 9, 1990), Mahoning App. No. 98 CA 93, unreported. Appellant was convicted of a sexually oriented offense and is, therefore, a sexually oriented offender. Accordingly, appellant's third assignment of error is not well-taken.
 IV.
In his supplemental assignment of error, appellant complains that the trial court failed to state its statutorily mandated reasons for imposing a maximum sentence on his kidnaping conviction and for making his sentences consecutive.
R.C. 2929.14(C) provides, in pertinent part, that a court may impose the maximum sentence provided by law only if the court finds that the offender committed the worst form of the offense or possesses the greatest likelihood of committing future crimes. In imposing such a sentence, the court must, on the record, state its reasons for imposing the sentence. R.C.2929.19(B)(2)(a).
R.C. 2929.14(E)(4) permits the court, in its discretion, to impose consecutive terms for convictions of multiple offenses if it finds that such a sentence is necessary to protect the public from further crime or to punish the offender and the consecutive sentences are not disproportionate to the offender's conduct and the danger the offender poses to the public. Also as a predicate to the imposition of consecutive sentences, a court must find that,
 "(a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 "(b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."
The court must also state on the record its reasons for selecting consecutive sentences. R.C. 2929.19(B)(2).
When a court is required to state its reasons for imposing a sentence it is required that the court, "* * * provide a finding and an explanation by setting forth `the basis of the findings it made.'" State v. Edmonson (1999), 86 Ohio St.3d 324,326.
In this matter, the trial court, in its sentencing entry found that appellant committed, "* * * the worst form of the offenses and poses the greatest likelihood of recidivism." The court further found the harm caused by appellant's offense was "* * * great or unusual."
At the sentencing hearing, the court addressed appellant and explained the reasoning for its sentence:
 "THE COURT: This is a vicious, violent, unprovoked, horrendous act not only upon Marsha Young, but the children. Your description of what occurred here doesn't square with anything that was testified to in court. The Court has a requirement to protect the public and punish individuals like you. I'm particularly disturbed by your inability to control your behavior and the violence with which these acts were committed and without any apparent remorse or concern about what you did. The public in my opinion needs to be protected from behavior like this for as long as appropriate.
"* * *
 "I've looked a the presentence report, as well as the principles and purposes of sentencing under Revised Code 2929.11, and balanced the seriousness and the recidivism factors under 2929.12, finding the — this offense to be more serious and recidivism more likely.
"* * *
 "It's hereby ordered on count 1, felonious assault, defendant to serve a term of 5 years. On count 2, felonious assault, the defendant is to serve a term of 5 years. On count 4, the kidnaping charge, the defendant is to serve a term of 10 years. These sentences are ordered served consecutively to one another, being necessary to fulfill the purposes of Revised Code Section 2929.11 and not disproportionate to the seriousness of the offender's conduct or the danger the offender poses to the community, and the Court further finds that the harm caused great and unusual, and an additional term of one year for each firearm specification to each count will be ordered served as a mandatory and consecutive term. They will be consecutive to one another and consecutive to the terms imposed on the felonious assault counts and the kidnaping count."
Viewing the sentencing entry and the sentence colloquy together, it is clear that the court made all the findings necessary to impose the maximum sentence for kidnaping and consecutive terms. Moreover, the court explained that its findings were influenced by the viciousness of appellant's behavior, his inability to control his violent behavior and his lack of remorse for or acceptance of his acts. In our view, this explanation is sufficient to satisfy the requirements of R.C.2929.14(B)(2).
Accordingly, appellant's supplemental assignment of error is not well-taken.
 V.
R.C. 2929.14(D)(1)(a)(i) provides that an offender convicted of a felony and a firearm specification pursuant to R.C.2941.141 shall be sentenced to a mandatory one year sentence for the firearm specification. The statute contemplates a separate sentence for each separate count and specification, but specifically prohibits the court from imposing multiple firearm specification terms for multiple felonies, "* * * committed as part of the same act or transaction."
The "act or transaction" language was defined in its prior incarnation as part of the now superseded R.C. 2929.71. InState v. Wills (1994), 69 Ohio St.3d 690, 691, quoting State v.Caldwell (Dec. 4, 1991) Summit App. No. 14720, unreported, the Supreme Court of Ohio defined "transaction" as, "`a series of continuous acts bound together by time, space and purpose, and directed toward a single objective.'" State v. Evans (Sept. 3, 1998), Cuyahoga App. No. 73018, unreported.
The definition is not easily employed. In Wills, a thief who used the same gun to take jackets from separate victims was deemed to have committed separate transactions. A defendant who wounded multiple victims by firing repeatedly into a car was held to have done so in a "single transaction." State v. Jordan
(Nov. 25, 1998), Cuyahoga App. No. 73364, unreported. Possession of a weapon under disability and felonious assault were held to be a part of a single transaction, namely assaulting a single victim.State v. Jones (Mar. 18, 1999) Franklin App. No. 1248, unreported. Multiple shots fired at a single victim in a single incident is a single transaction. State v. Kaszas (Sept. 10, 1998), Cuyahoga App. No. 72546, 73547, unreported. However, a burglary and subsequent flight from police are separate transactions. State v.Kirk (July 14, 1998), Franklin App. No. 97APA09-1247, unreported. A burglary committed while armed and a concurrent shot at a police officer were separate transactions because they did not, "necessarily arise from the same objective * * *." State v. White
(1991), 71 Ohio App.3d 550, 555.
In the present matter, appellant's assault on Marsha Young appears to have been motivated by some sort of rage, its objective to inflict punishment upon her. Although this occurred at the same time as appellant's assault on Williams Evans, appellant's objective for the Williams' assault was more of an effort to prevent Evans' interference.
Concerning the firearm specification attached to the kidnaping charge, the testimony was that appellant actually discarded his first gun as he dragged Young through the alleys of Toledo. Appellant obtained a second gun, according to Marsha Young, when the pair arrived at the apartment where appellant would sexually assault her. Thus, while the objective of the kidnaping may or may not have been the same at that point, there was a substantial difference in the time, space and perhaps purpose in that specification. Consequently, we cannot say that the trial court erred in imposing concurrent sentences for three separate firearm specifications.
Accordingly, appellant's remaining assignment of error is found not well-taken.
Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed. Costs to appellant.
 _____________________ Peter M. Handwork, J.
James R. Sherck, J., Richard W. Knepper, P.J., CONCUR.