DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas, which following a jury trial, found appellant, Gustavo Tapia, guilty on one count each of involuntary manslaughter, in violation of R.C. 2903.04, a felony of the first degree, with a firearm specification, aggravated burglary, in violation of R.C. 2911.11(A)(1), a felony of the first degree, and kidnapping, in violation of R.C.2905.01(A)(2), a felony of the first degree. Appellant was sentenced to seven years incarceration as to both the aggravated burglary and kidnapping convictions, to be served concurrently to each other, and ten years as to the involuntary manslaughter conviction, with an additional mandatory and consecutive three year term on the specification. The trial court ordered that appellant's sentence as to the involuntary manslaughter must be served consecutively to both the kidnapping and aggravated burglary sentences. Appellant's total time of incarceration is therefore twenty years.
Appellant appeals his conviction and sentence and raises the following assignments of error:
"ASSIGNMENTS OF ERROR
 "I. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT TO AN AGGREGATE SENTENCE IN EXCESS OF THE STATUTORY LIMITATION
 "II. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT, A FIRST TIME OFFENDER, TO THE MAXIMUM SENTENCE
 "III. THE JURY INSTRUCTION FAILED TO INCLUDE ALL THE ELEMENTS RESULTING IN CONFUSION FOR THE JURY
 "IV. DEFENDANT'S CONVICTION OF KIDNAPING WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE"
For the reasons that follow, we affirm the decision of the trial court.
Appellant's conviction arose out of an incident occurring on or about January 27, 1997. He was indicted for this offense on February 18, 1999. The matter went to trial on May 24, 1999, and the jury verdicts were rendered on May 28, 1999, and journalized on June 1, 1999. Appellant was sentenced on June 2, 1999. The judgment entry of sentencing was journalized on June 4, 1999.
At trial, the evidence adduced established that late in the evening of January 26, 1997, appellant planned, with a number of individuals, to go to the home of Lee Abbey to raid the residence and seize large quantities of drugs and money. The group planned to split the proceeds from the raid. According to Jason Horton, a co-defendant, it was appellant's intention to raid the home of Charles Webb, who was a known drug dealer. Webb, however, no longer lived at the address in question. According to the plan, Michael Pettengill, Kenneth Frey, and Horton were supposed to go through the front door and then let in two others, Sean Massie and Martine Castillo (appellant's relative), through the back door. Meanwhile, Craig and Steven Brewer were to remain in their vehicle and appellant was to remain in his.
Early in the morning of January 27, 1997, the group went to the victim's home. Pettengill and Frey were dressed as police officers and carried weapons. Pettengill and Frey pounded on the front door and yelled something like, "Toledo Police! Open up!" Frederick Borden, a guest in Abbey's home, awoke and answered the door. Borden was ordered to get down on the floor. Frey went to the back door and let in the others. Borden's thirteen year old daughter and Abbey were found in their respective bedrooms. The house was ransacked. Abbey was ordered by Horton and Frey to lead them to the drugs. Abbey led them to the basement where there was a small quantity of cocaine. All three victims were moved through the house at gunpoint and eventually ended up in the kitchen, lying on their stomachs.
Seemingly concerned about the length of time the raid was taking, appellant entered the residence through the back sliding door. The testimony varies slightly at this point. In particular, Pettengill testified that he handed appellant his gun when appellant entered. Pettengill then left to search the house further. When Pettengill returned, appellant was covering the victims in the kitchen with the gun. Pettengill testified that, when appellant was told there were no drugs or money present, appellant got angry and said, "something like, `f * * k that s * * t. I know they got the drugs'." At that point, appellant shot Abbey.
Frey did not know when appellant got the gun. Frey, however, did testify that he found a silver briefcase and brought it into the kitchen for Abbey to open. When Frey ordered Abbey to open the suitcase, appellant "yelled out for Mr. Abbey to get back down on the floor." At this point, appellant shot Abbey.
Massie testified that he heard appellant ask for a gun and then order Abbey to get up and open the suitcase. As Abbey was getting up, appellant shot him.
Horton testified that he heard appellant order Pettengill to search the house and that appellant took Pettengill's gun. According to Horton, while the victims were on the kitchen floor, appellant was pointing the gun at them. Horton also testified that Frey brought in a suitcase that Frey wanted Abbey to open. Horton heard appellant say, "Don't move" to Abbey, but Abbey did move. As Abbey "moved up to open up the suitcase," the gun went off. Horton's back was to appellant during the shooting, but could tell Abbey's positioning when Horton turned around to look after he heard the shot.
Frederick Bordon testified that Abbey was getting up to tell the co-defendants to stop their rampage when they shot Abbey. Bordon could not identify the shooter.
According to the witnesses, as soon as Abbey was shot, all of the co-defendants ran out the back sliding door to the vehicles. According to the co-defendants, appellant stated that he disposed of the gun in the river.
Appellant, on the other hand, testified that he went into the house after a few minutes because it was taking too long and because there was a lot of noise and screaming coming from inside the house. According to appellant, he entered the house through the back sliding door and went into the basement. He looked for drugs in the basement and found Castillo down there as well. Appellant then returned upstairs and stood by the sliding door. He saw Pettengill yelling at Abbey. Frey brought in a suitcase and Pettengill yelled at Abbey to open it. Appellant testified that Abbey was not listening and so Pettengill handed his gun to appellant so that Pettengill could get Abbey up to open the suitcase. As Pettengill was handing appellant the gun, it went off. Appellant testified that he did not know anyone had even been hit by the shot.
Appellant argues in his first assignment of error that the trial court erred in sentencing him to an aggregate sentence of twenty years as that amount is in excess of the statutory limitation set forth in former R.C.2929.41(E), which stated in relevant part:
 "Consecutive terms of imprisonment imposed shall not exceed
"* * *
 "(2) An aggregate minimum term of fifteen years plus the sum of all three-year terms of actual incarceration imposed pursuant to section 2929.71[1] of the Revised Code."
Appellant's argument fails for two reasons. First, the fifteen year time limitation contained in former R.C. 2929.41(E)(2) did not apply to definite terms of incarceration.[2] Second, at the time of this offense, which occurred on January 27, 1997, R.C. 2929.41(E)(2) no longer existed. As such, the trial court was not limited by R.C. 2929.41(E)(2) to a particular term of incarceration when sentencing appellant. Additionally, we note that the trial court made the appropriate findings, pursuant to R.C. 2929.14(E)(4)(b), in ordering consecutive sentences to be served. Appellant's first assignment of error is therefore found not well-taken.
Appellant argues in his second assignment of error that the trial court erred in not sentencing appellant, a first time offender, to the shortest authorized prison term. Appellant relies on State v. Montgomery (Sept. 26, 2000), Franklin App. No. 99AP-1198, unreported, in support of his argument. Appellant asserts that in Montgomery, the court found that the trial court erred in not ordering the shortest time possible when the defendant had not previously served a prison term.
We initially note that appellant incorrectly states the basis for the reversal in Montgomery. The trial court's judgment of sentencing was reversed in Montgomery because the trial court failed to comply with R.C. 2929.14(B), which states that if a trial court decides to impose a prison sentence on an offender of a felony who has not previously served a prison term, the trial court is required to impose the shortest authorized prison term unless the trial court finds that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime. Montgomery's sentence was overturned because the trial court sentenced her to a prison term greater than the shortest term allowed, but failed to state its reason for doing so, e.g., that the shortest prison term would demean the seriousness of her conduct or would not adequately protect the public from future crime.
In this case, as to each offense, the trial court stated on the record that the shortest prison term would "demean the serious nature of the offense" and that a longer term was necessary "for the protection of the public." The trial court repeated these findings in its June 4, 1999 judgment entry of sentencing. Clearly, the requirements of R.C. 2929.14(B) were satisfied in this case.[3]
Additionally, we note that in sentencing appellant to the longest prison term authorized for involuntary manslaughter, the trial court complied with the requirements of R.C. 2929.14(C). In order for the trial court to impose the maximum sentence on an offender for a single offense, "the record must reflect that the trial court imposed the maximum sentence based on the offender satisfying one of the listed criteria in R.C. 2929.14(C)."[4] These listed criteria are (1) "offenders who committed the worst forms of the offense," (2) "offenders who pose the greatest likelihood of committing future crimes," (3) "certain major drug offenders," and (4) "certain repeat violent offenders."[5] In this case, the trial court specifically found that appellant committed the worst form of the offense and posed the greatest likelihood of recidivism.
Additionally, we find that the sentence of the trial court is supported by the record. The trial court referenced a number of factors in support of sentencing appellant to terms longer than the minimum allowable and, with respect to the involuntary manslaughter conviction, to a maximum sentence. For instance, the trial court noted the fact that appellant previously had been involved in numerous drug deals with Horton, that appellant was apparently the ringleader of the group, who planned the entire "night of horror," and persuaded the others to go along with his plan, that the victims did nothing to cause the events, that appellant evaded the police for two years, and lacked genuine remorse for the victims. Having found that the trial court complied with R.C. 2929.14(B) and R.C. 2929.14(C), we find appellant's second assignment of error not well-taken.
Appellant asserts in his third assignment of error that the trial court failed to include all the elements of kidnapping when giving the jury instructions, thus resulting in confusion for the jury. Specifically, appellant argues that the trial court failed to define the term "knowingly".
Appellant, however, failed to object at trial to this alleged error. As such, appellant's argument is waived, except for plain error.[6] In order to establish plain error, appellant must show that but for the error, the outcome of the trial clearly would have been otherwise.[7]
"Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."[8]
We find that appellant's challenge to the jury instructions lacks merit. Appellant was convicted of R.C. 2905.01(A)(2), which states as follows:
 "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes:
"* * *
 "(2) To facilitate the commission of any felony or flight thereafter * * *"
R.C. 2905.01(A) does not contain a "knowingly" element, whereas R.C.2905.01(B) does. Nevertheless, the trial court instructed that kidnapping is "knowingly removing, restraining or holding an individual by force, threat or deception."
Where a jury instruction contains erroneous statements, "the total charge must be reviewed to determine whether the jury has been instructed so as to reasonably afford a basis to apply the law to the facts of the case without prejudice to the parties."[9] Even assuming that the trial court was required to define "knowingly", because it included that phrase in its instructions, this term was defined by the trial court with respect to felonious assault. The trial court stated:
 "A person acts knowingly, regardless of purpose, when he's aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he's aware that such circumstances probably exist."
We find that, based upon a review of the entire charge to the jury, the trial court's instructions were sufficient and reasonably afforded a basis for the jury to apply the law to the facts of the case, without prejudice to appellant.[10] Accordingly, we find that any error with respect to the instructions do not rise to the level of plain error. Appellant's third assignment of error is therefore found not well-taken.
In his fourth assignment of error, appellant argues that his conviction of kidnapping was against the manifest weight of the evidence. Specifically, appellant argues that there was no separate animus to commit the kidnapping offense and that the jury could not have found the essential elements of the offense proven beyond a reasonable doubt.
We will first consider whether the evidence supports a conviction of kidnapping. Weight of the evidence indicates that the greater amount of credible evidence supports one side of an issue more than the other.[11]
In Thompkins, the Ohio Supreme Court has defined the standard applied to determine whether a criminal conviction is against the manifest weight of the evidence:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony."[12]
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses.[13] Only if we conclude that the trier of fact clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial.[14]
We have thoroughly reviewed the evidence in this case and find no indication that the trier of fact lost its way or created a manifest miscarriage of justice by finding appellant guilty of kidnapping. There was ample evidence that, pursuant to the plan in which appellant participated, the victims were forcibly moved within the home and restrained on the kitchen floor. Once appellant entered the home, he requested and/or acquired Pettengill's gun, ordered that further searching be done, and continued restraining the victims at gunpoint. We find that the jury did not lose its way and that the evidence supports a conviction of kidnapping.
With respect to his argument concerning the need for a separate animus to sustain his kidnapping conviction, appellant relies on State v. Tinch
(1992), 84 Ohio App.3d 111. Appellant asserts that the court in Tinch
held that there was no separate animus to commit kidnapping when Tinch was also convicted of aggravated murder. This analysis of Tinch is entirely incorrect. The court in Tinch actually found that there was a separate animus for kidnapping and that it was not merely incidental to the murder conviction. Accordingly, appellant's reliance on Tinch is misplaced.
Rather, in considering whether a separate animus exists to warrant a separate conviction for kidnapping, the Ohio Supreme Court has stated as follows:
 "In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:
 "(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
 "(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions."[15]
In this case, it was not necessary to restrain the victims to burglarize the home or commit manslaughter. As such, the kidnapping conviction was not merely incidental to the other convictions. Additionally, the restraint of the victims clearly subjected them to a substantial increase in risk of harm separate and apart from that involved in burglary. But for the restraint, Abbey would not have been in a position to be shot by appellant.
Accordingly, we find that appellant's conviction was not against the manifest weight of the evidence. Appellant's fourth assignment of error is therefore found not well-taken.
On consideration whereof, this court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., JUDGES CONCUR.
[1] An analogous section to former R.C. 2929.71 is R.C. 2929.14
regarding sentencing for firearm specifications.
[2] Yonkings v. Wilkinson (1999), 86 Ohio St.3d 225, 227.
[3] See, also, State v. Edmonson (1999), 86 Ohio St.3d 324, 326.
[4] Id. at 329.
[5] R.C. 2929.14(C); State v. Seitz (2001), 141 Ohio App.3d 347
.
[6] Crim.R. 30(A); State v. Underwood (1983), 3 Ohio St.3d 12, syllabus.
[7] State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
[8] Id. at paragraph three of the syllabus.
[9] State v. Hardy (1971), 28 Ohio St.2d 89, paragraph two of the syllabus.
[10] See, also, State v. Gambrel (Feb. 2, 2001), Miami App. No. 2000-CA-29, unreported.
[11] State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
[12] Id. at 388, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
[13] Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
[14] Id.
[15] h p x