OPINION
{¶ 1} Defendant-appellant John Vingino appeals from his conviction entered in the Belmont County Court, Eastern Division. He claims that his conviction for operating a motor vehicle under the influence was against the manifest weight of the evidence and that his arrest for such offense lacked probable cause. For the following reasons, appellant's arguments are without merit, and the judgment of the trial court is affirmed.
 STATEMENT OF THE CASE {¶ 2} On April 28, 2005 at 2:00 p.m., Trooper Hendershot of the St. Clairsville Highway Patrol responded to a report of a one-car collision on State Route 149 outside of Bellaire, Ohio. Appellant was still sitting in his wrecked car when the trooper arrived. It appeared that he went off the right side of the road when approaching a left turn. He then hit a guardrail and came back across the road sideways ending up facing the opposite direction on the other side of the road. (Tr. 7).
 {¶ 3} Appellant was ticketed for failure to control in violation of R.C. 4511.202 and driving under the influence of alcohol or a drug of abuse in violation of R.C. 4511.19(A)(1). He originally pled guilty to the failure to control charge. The driving under the influence charge was tried to the court on July 28, 2005.
 {¶ 4} Trooper Hendershot testified that appellant did not smell of alcohol or otherwise have indicators of being drunk. (Tr. 8, 11). The officer also testified that appellant was known to be a person who did not abuse alcohol. (Tr. 11). However, appellant disclosed that he was on the prescription medications Xanax and Oxycontin. (Tr. 9). He told the trooper that he last took a pill that morning and that he only took what was prescribed. (Tr. 16).
 {¶ 5} The trooper knew appellant and thus could compare his behavior that night to his regular behavior. (Tr. 8-9). The trooper stated that appellant was definitely impaired to an extent where he should not have been driving. (Tr. 7, 8). Appellant had slow speech, his eyes were not focused, and he was looking beyond the trooper as he spoke. Appellant stumbled to exit the vehicle and had to lean on it for support. And, he stumbled when he tried to walk. (Tr. 7). The trooper also revealed that appellant was unaware of where he was. (Tr. 8).
 {¶ 6} The trooper concluded from appellant's condition and the fact of the crash that appellant may have taken too much medication. (Tr. 9). The trooper stated that appellant was not injured in the crash but conceded on cross-examination that some of his symptoms could possibly have been caused by the crash. (Tr. 11).
 {¶ 7} A change of shifts occurred, and Trooper Thompson took over at the scene for Trooper Hendershot. The ambulance had already checked appellant and left, and appellant did not complain of any physical injuries to the arriving trooper. (Tr. 19, 21). Trooper Thompson testified that appellant was extremely unsteady on his feet, very unstable, had slow speech and was disoriented as to what was going on. (Tr. 19, 23). He noted that appellant believed he could drive the car away; however, the vehicle was obviously too damaged to drive. (Tr. 19, 22). He concluded that appellant was extremely impaired and most definitely under the influence of drugs. (Tr. 23).
 {¶ 8} This trooper then explained that he performed the horizontal gaze nystagmus test on appellant and has never seen results so exaggerated or the pupils bounce that quickly before. (Tr. 20). He did not perform physical tests because he witnessed appellant's unsteady walking and believed that appellant could not understand his directions. (Tr. 20).
 {¶ 9} He opined that appellant's condition was not caused by the crash but was caused by drugs. (Tr. 23). Appellant gave a statement that he had prescriptions for Xanax and Oxycontin. But, he claimed in his statement that he only took one pill that morning, Oxycontin. (Tr. 21). See, also, State's Exhibit 1.
 {¶ 10} Yet, at trial, appellant testified that he was taking a whole list of medications for colon cancer, bad back and high blood pressure. He stated that he only took the prescribed doses and never had problems with the medications before. (Tr. 29-30). Then, he mentioned that his high blood pressure had caused blackouts in the past. (Tr. 30). His lawyer basically testified for him that he blacked out before the crash. (Tr. 32). Appellant testified that he was not wearing a seatbelt and that he hit his head in the crash. (Tr. 34). He concluded that he did not know what to attribute his observed condition to that night. (Tr. 34-35).
 {¶ 11} The defense concluded by arguing that appellant had an adverse reaction to his prescribed medication. The state countered that appellant is not credible as his statement did not mention blackouts or more than one pill taken that day. The state urged that appellant overdosed on his prescribed medication.
 {¶ 12} On July 28, 2005, the court found appellant guilty of driving under the influence. (His guilty plea to failure to control was withdrawn, and that charge was dismissed with consent of the state.) The court sentenced appellant to ten days in jail with seven suspended. He asked to serve the three days in jail rather than the residential class due to financial concerns. His license was suspended for six months with weekday privileges to obtain food and medicine. Appellant filed timely notice of appeal.
 LAW {¶ 13} R.C. 4511.19(A)(1)(a) prohibits operating a vehicle while under the influence of alcohol, a drug of abuse or a combination of both. As used in the Revised Code, a drug of abuse is a controlled substance listed in R.C. 3719.01, a harmful intoxicant described in R.C. 2925.02 or a dangerous drug as defined in R.C. 4729.01. R.C. 3719.011(A).
 {¶ 14} A controlled substance is one included in schedules I, II, III, IV or V.R.C. 3719.019(D). See, also, R.C. 3719.01(BB). Oxycodone is a schedule II controlled substance, labeled a narcotic containing opium. R.C. 3719.41(A)(i)(n). Regardless, a dangerous drug is defined as one that requires a label stating that federal law prohibits dispensing without a prescription or merely one that can be dispensed only with a prescription. R.C.4729.01(F)(1)(a), (b).
 {¶ 15} Thus, appellant does not dispute that his prescription Xanax and/or Oxycontin medications constitute drugs of abuse under R.C. 4511.19(A)(1)(a). Using the statutory criteria, one can violate R.C. 4511.19(A)(1)(a) if driving under the influence of a legal prescription, even in the prescribed dose, if it impairs their ability to operate the vehicle. See, e.g., Statev. Rizzo, 11th Dist. No. 2002-T-0121, 2003-Ohio-4724 (Oxycontin and Wellbutrin); State v. Smith (Feb. 27, 1998), 6th Dist. No. OT-97-037 (Soma for back injury); State v. BoCook (Oct. 6, 1992), 4th Dist. No. 1813 (Valium). As one court noted, a doctor may prescribe a few shots of bourbon for some patients; and, although the consumption is legal and even prescribed by a physician, there is no absolute right to drive after such consumption. South Euclid v. Heil (1991), 62 Ohio Misc.2d 540,541 (schedule IV narcotics can lead to impaired driving conviction even if lawfully prescribed and consumed).
 {¶ 16} Being "under the influence" of a drug of abuse includes not only the easily recognized conditions of intoxication but any abnormal mental or physical condition which is the result of indulging in any degree in the consumption of a drug of abuse and which tends to deprive the one using it of the clearness of intellect and control of himself which he would otherwise possess. See State v. Hardy (1971), 28 Ohio St.2d 89,90. So, if one's physical or mental ability to act and react are altered from normal due to the ingestion of the drug of abuse, the person can be considered to be unlawfully driving under the influence of the drug. See id. at 91.
 ASSIGNMENT OF ERROR NUMBER ONE {¶ 17} Appellant's first assignment of error alleges:
 {¶ 18} "THE OFFICERS LACKED THE REQUISITE PROBABLE CAUSE TO ARREST THE APPELLANT."
 {¶ 19} Appellant states that although he showed evidence of impairment, the officers failed to request that he submit to testing for the presence and the amount of drugs. Appellant then claims that it was just as likely that his condition was caused by his injuries as from an adverse reaction to taking prescribed medication. He concludes that without more testing, the officers lacked probable cause to arrest him.
 {¶ 20} We note here that there is no suppression issue as usually accompanies a probable cause argument since no evidence was obtained after the arrest. We also note that even if a test was requested, drug test results are unlikely to be immediately available in time to make the arrest decision that is necessary to prevent further driving. And, there is no indication that a drug test can definitively state impairment at a certain time as alcohol testing can. See R.C. 4511.19(A)(1)(b)-(i) (all dealing with prohibited concentration levels of alcohol). Also, such tests are not mandated prior to or after arrest. See State v.Urrego (1974), 41 Ohio App.2d 124, 126 (7th Dist.) (state need not gather evidence for the defendant, and the defendant has no absolute right to a blood test). Rather, where test results are thrown out for some administrative violation or other, the charge can still be tried on the officer's testimony of impairment. Moreover, appellant admitted ingestion of at least one Oxycontin pill that morning before a 2:00 p.m. one-car crash.
 {¶ 21} Probable cause to arrest exists when officers have knowledge of facts and circumstances grounded in reasonable trustworthy information to warrant a belief by a prudent person that the defendant was driving under the influence of a drug of abuse. See State v. Homan (2000), 89 Ohio St.3d 421, 427. The court must view the totality of the facts and circumstances along with the reasonable inferences that can be drawn therefrom. Id.
 {¶ 22} The Sixth Appellate District found probable cause to arrest where the trooper witnessed the defendant's car drift over the center line and then observed unsteady walking, swaying, slurred speech, failed horizontal gaze nystagmus test, and an admission to prescription medicine use for back pain. Smith,
6th Dist. No. OT-970-37. See, also, State v. Pyle, 2d Dist. No. 2003-CA-35, 2003-Ohio-6664, ¶ 20 (probable cause to arrest where defendant claimed he ingested one Oxycontin pill per day and exhibited signs of impairment).
 {¶ 23} Here, appellant was involved in a one-car collision. It appeared that he went off the road on approaching a left curve. He hit a guardrail and then overcorrected, causing his vehicle to propel broadside across the road and end up facing the opposite direction. Although his car was extensively damaged, he still thought he could safely drive it. Two troopers opined that appellant was too impaired to be driving. He had slow speech and unfocused eyes. He looked beyond the trooper when speaking. He stumbled when he walked and had to lean for support. He was extremely unsteady and very unstable.
 {¶ 24} Furthermore, appellant was disoriented and did not know where he was or what was going on. He admitted to being on prescription Xanax and Oxycontin. He later stated he took only one Oxycontin that morning. He had been cleared by emergency medical services and was not complaining of physical injuries from the crash. And, the field sobriety test results for the horizontal gaze nystagmus test were the most extreme the trooper had ever witnessed.
 {¶ 25} Under the totality of the circumstances, a prudent person could find probable cause to believe that appellant had been driving while under the influence of a drug of abuse. This assignment of error is therefore overruled.
 ASSIGNMENT OF ERROR NUMBER TWO {¶ 26} Appellant's second assignment of error contends:
 {¶ 27} "THE JUDGMENT OF THE TRIAL COURT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 28} Appellant incorporates the arguments from his prior assignment of error and adds that the court arbitrarily accepted the speculative opinions of the troopers who failed to test to determine the cause of appellant's sudden, adverse reaction.
 {¶ 29} In reviewing a manifest weight of the evidence argument, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. The appellate court's discretionary power to grant a new trial on these grounds can only be exercised in the exceptional case where the evidence weighs heavily against the conviction. Id.
 {¶ 30} This strict test acknowledges that fact-finding and weighing of the evidence are generally the province of the trier of fact who sits in the best position to assess the credibility of the witnesses whose gestures, voice inflections, and demeanor are personally observed. State v. Hill (1996),75 Ohio St.3d 195, 205; State v. DeHass (1967), 10 Ohio St.2d 230, 231. See, also, Seasons Coal Co., Inc. v. Cleveland (1984),10 Ohio St.3d 77, 80. Where there are two fairly reasonable views or explanations, we do not choose which one we prefer. State v.Black, 7th Dist. No. 03JE1, 2004-Ohio-1537, ¶ 18. Rather, we defer to the trier of fact unless the evidence weighs so heavily against conviction that we are compelled to intervene. Id.
 {¶ 31} Considering the evidence related above, a rational trier of fact could believe that appellant had been driving while under the influence of a drug of abuse. That is, one could reasonably find that his physical and/or mental ability to act and react were altered from normal due to ingestion of prescription medication. See Hardy, 28 Ohio St.2d at 90 (also directing consideration of whether there is some deprivation of clearness of intellect and control defendant would otherwise possess).
 {¶ 32} Moreover, although a reasonable person could believe that appellant's observed condition was the result of hitting his head in the accident, a reasonable person could also believe the troopers' conclusion, that appellant's indicia of impairment were due to his prescription medication use. In fact, one could even reach the conclusion that appellant's impairment was due to his taking more than the prescribed dosages of his medication, one of which is a highly regulated and addictive drug often sold on the streets. As the state pointed out, appellant's signed statement of taking one pill varied from his testimony at trial.
 {¶ 33} In conclusion, the evidence does not weigh heavily against the trial court's resolution of the case. As such, this assignment of error is overruled.
 {¶ 34} For the foregoing reasons, the judgment of the trial court is hereby affirmed.
Waite, J., concurs.
DeGenaro, J., concurs.