OPINION
{¶ 1} Defendant-appellant, Wendy Murphy, appeals from her convictions for possession of drugs, in violation of R.C.2925.11, and endangering children, in violation of R.C. 2919.22. For the following reasons, we reverse Murphy's convictions.
 {¶ 2} Just after 6 p.m. on January 24, 2005, Michael Hren was driving east on Central College Road when he noticed that the Ford Sport Trac in front of him was drifting from one side of the lane to the other. Concerned by this erratic driving, Hren called 911 on his cellular telephone and told the 911 operator that he was driving behind a motorist who appeared to be intoxicated. The 911 operator dispatched Officer Scott Anderson of the New Albany Police Department to Hren's location.
 {¶ 3} While approaching the intersection of Central College Road and State Route 605, Officer Anderson activated his cruiser's video recorder. As shown on the resulting tape, Officer Anderson overtook Hren's vehicle at the intersection and, following Hren's directions, turned south onto State Route 605. Almost immediately, Officer Anderson encountered the Sport Trac. Officer Anderson observed the Sport Trac go left of the center double-yellow lines, touch the white line at the right edge of the road, and drive 44 m.p.h. through a 25 m.p.h. zone. When the Sport Trac slowed for a red stoplight, Officer Anderson could see children moving around in the vehicle. In fact, one boy rolled down the rear window and waved at Officer Anderson.
 {¶ 4} Although the Sport Trac pulled into the left turn lane at the stoplight, it continued straight on State Route 605. The Sport Trac then pulled into the parking lot at the rear of the New Albany Police Station and stopped. Officer Anderson approached the vehicle and asked the driver, Murphy, for her driver's license and registration. Murphy had difficulty finding her license and registration and, when she spoke, her voice was raspy and slow and her speech was slurred. As Officer Anderson stood waiting, one of the two boys told him that Murphy had been falling asleep as she drove.
 {¶ 5} Officer Anderson viewed Murphy's license and registration and then asked her to exit her vehicle. Once Murphy was outside the Sport Trac, Officer Anderson conducted a horizontal gaze nystagmus test. Based upon the results of that test and the abnormal constriction of Murphy's pupils, Officer Anderson concluded that Murphy was under the influence of either alcohol or some drug.
 {¶ 6} Officer Anderson placed Murphy in the backseat of his cruiser and asked permission to search her purse and vehicle. Murphy consented. During his search of Murphy's purse, Officer Anderson found three and one-half small, blue pills in a side pocket. Next, Officer Anderson searched the Sport Trac. While he did so, Officer Carl McNeal watched Murphy through the cruiser's passenger window. Officer McNeal observed Murphy fall asleep several times, rousing only when her head hit the window or the cage separating the front and back seats of the cruiser.
 {¶ 7} When Officer Anderson returned to his cruiser, Murphy told him that she needed to use the restroom. Officer Anderson escorted her into the police station and, because it was cold and snowy, decided to remain in the station to conduct additional field sobriety tests. At trial, the city played a videotape from the recorder in the station's booking area that showed Officer Anderson directing Murphy through the one-leg-stand, walk-and-turn, and alphabet tests. Murphy displayed poor balance while completing these tests. Based upon Murphy's erratic driving, constricted and droopy eyes, slurred speech, sleepiness, and general unsteadiness, Officer Anderson arrested her.
 {¶ 8} In the course of completing the paperwork incidental to Murphy's arrest, Officer Anderson looked through the Physicians' Desk Reference to identify the small, blue pills he had found in Murphy's purse. The videotape shows Murphy examining the pills and saying, "[t]hose are Valium."
 {¶ 9} Before leaving the police station, Murphy gave a urine sample, which Officer Anderson collected. Officer Anderson also served Murphy with three complaints he had sworn out: (1) for operating a vehicle in violation of R.C. 4511.19(A) while one or more children under the age of 18 years of age were in the vehicle, in violation of R.C. 2919.22(C)(1) and (2) for knowingly obtaining, possessing, or using Valium, a schedule IV controlled substance, in violation of R.C. 2925.11, and (3) for operating a motor vehicle under the influence of a drug of abuse ("OVI"), in violation of R.C. 4511.19(A)(1)(a).
 {¶ 10} The day after Murphy's arrest, Officer Anderson delivered her urine sample to the Ohio State University Medical Center Toxicology Laboratory ("OSU") for drug testing. Murphy's urine tested positive for two benzodiazepines — nordiazepam and temazepam.
 {¶ 11} On July 19, 2005, a jury trial began on the three charges against Murphy. Hren, Officer Anderson, Officer McNeal, and three OSU employees testified, and the trial court accepted into evidence the videotape that depicted Murphy's driving, the traffic stop, the field sobriety tests, and, finally, the processing of Murphy's arrest. At the conclusion of the evidence, the jury found Murphy guilty of endangering children and possession of drugs. The jury was unable to return a verdict on the OVI charge, and thus, the trial court entered a mistrial on that charge.
 {¶ 12} With regard to the possession of drugs conviction, the trial court sentenced Murphy to pay a $250 fine and court costs and serve 60 days in jail. With regard to the endangering children conviction, the trial court sentenced Murphy to pay a $250 fine and court costs and serve 180 days in jail. The trial court ordered Murphy to serve the jail terms consecutively, for a total of 240 days. On August 30, 2005, the trial court reduced Murphy's convictions and sentences to judgment.
 {¶ 13} Murphy now appeals from the August 30, 2005 judgments, and assigns the following errors:
1. The trial court committed plain error and error in giving the confusing, erroneous jury instructions on the charge of child endangering including changing the identify [sic] of the offense from a charge of child endangering in violation of R.C.2919.22(C) to R.C. 2919.22(A) by adding three elements of R.C.2919.22(A) that are not contained in R.C. 2919.22(C), and improperly mixing the elements of the offense between R.C.2919.22(A) and R.C. 2919.22(C).
2. The trial court committed plain error and error in omitting an essential element of the offense of child endangering in violation of R.C. 2919.22(C) that the offense was committed "recklessly" and in failing to define an essential element of R.C. 2919.22(C) the meaning of the term "Division (A) of Section 4511.19."
3. The trial court committed plain error in failing to instruct the jury that R.C. 2925.11 does not apply to any person who obtained the controlled substance pursuant to a prescription issued by a licensed health professional authorized to prescribe drugs.
4. The trial court erred in instructing the jury to consider reaching inconsistent jury verdicts over objection by instructing the jury "the charges set forth constitute separate and distinct matters. You must consider each charge and the evidence applicable to each charge separately and you must state your findings as to each charge uninfluenced by your verdict as to any other charge. The defendant may be found guilty or not guilty to any one or all of the offenses charged" when child endangering in violation of R.C. 2919.22(C)(1) requires as an element a violation of R.C. 4511.19(A)(1), and Appellant was charged with both child endangering in violation of R.C. 2919.22(C)(1) and OVI in violation of R.C. 4511.19(A)(1).
5. The trial court erred in permitting inadmissible hearsay and violated Appellant's right to confront witnesses by admitting prejudicial statements purportedly [sic] by occupants in Appellant's car that Appellant was falling asleep, out of court statements by medics that Appellant's blood sugar was good, and committed plain error in allowing a police officer to state that he saw Valium in the Physicians Desk Reference, and allowing the prosecutor to misstate evidence in closing argument that the occupants of Appellant's car said that "Mommy — Mommy's asleep and hit her head on the steering wheel. Mom almost drove us into a ditch."
6. The jury's verdict finding Appellant guilty of drug abuse for possessing three and one half pills in her purse and for child endangering was not supported by the evidence and was against the manifest weight of the evidence. The trial court erred in admitting the pills into evidence without a proper foundation or identification. The trial court erred in overruling Appellant's Rule 29 motion.
7. Appellant failed to receive a fair trial as the result of ineffective assistance of counsel who failed to object to incorrect jury instructions on the endangering children charge which changed the identity of the offense from R.C. 2919.22(C) to R.C. 2919.22(A), omitted the mens rea element, and failed to define the meaning of "R.C. 4511.19(A)(1)," failed to request a charge on prescription defense, even though Appellant said that she had a prescription for the pills she possessed and was charged with drug abuse, failed to object to hearsay statements that a police officer saw pills Appellant possessed in the Physicians Desk Reference, and failed to file a motion to suppress the results of urine testing or how the field sobriety tests were conducted even though the urine sample was not taken within two hours of the time of the violation in violation of R.C. 4511.19(D)(1) and the person who collected the sample was not listed on the container in violation of the Ohio Administrative Code 3701-53-06.
8. The trial court abused its discretion in sentencing Appellant to maximum consecutive sentences without indicating it had considered R.C., 2922.22(A) [sic] and R.C. 292912(C) [sic] mitigating sentencing factors for misdemeanor offenses.
 {¶ 14} We will first address Murphy's second assignment of error. By that assignment of error, she argues, in part, that the trial court committed plain error when it failed to instruct the jury on what constituted a "violation of division (A) of section4511.19 of the Revised Code." Murphy contends that, without this information, the jury could not determine whether or not she had endangered her children in violation of R.C. 2919.22(C)(1), which states in relevant part, "[n]o person shall operate a vehicle * * * within this state in violation of division (A) ofsection 4511.19 of the Revised Code when one or more children under eighteen years of age are in the vehicle * * *." (Emphasis added.) We agree.
 {¶ 15} "[A] trial court `must give all instructions that are relevant and necessary for the jury to weigh the evidence and discharge its duty as the factfinder.'" State v. Cornwell
(1999), 86 Ohio St.3d 560, 567, citing State v. Joy (1995),74 Ohio St.3d 178, 181. In the case at bar, the trial court articulated all of the elements of R.C. 2919.22(C)(1), but it did not explain to the jury a crucial element, i.e., what kind of conduct violates R.C. 4511.19(A). Although a trial court need not define commonly used terms for a jury, State v. Gross,97 Ohio St.3d 121, 2002-Ohio-5524, at ¶ 106, the identity of the offense set forth in R.C. 4511.19(A) is not within the ambit of common knowledge. Indeed, the instant jurors demonstrated unfamiliarity with R.C. 4511.19(A) when, during deliberations, they asked the trial court, "[c]an we see a copy of Division (A) of Section4511.19 of the Revised Code?" Rather than comply with this request, the trial court told the jury to "[p]lease rely upon instructions as already given." Unfortunately, the instructions contained no insight into the substance of R.C. 4511.19(A). Therefore, the jury did not have all of the instructions necessary for it to weigh the evidence and reach a verdict on the endangering children charge. Consequently, the trial court erred when it omitted an explanation of R.C. 4511.19(A) from the jury instructions.
 {¶ 16} However, this finding of error does not end our analysis. Because Murphy's attorney did not object to the omission of an instruction explaining R.C. 4511.19(A), we can only reverse her conviction for endangering children if the omission constitutes plain error. Crim.R. 52(B). "An erroneous jury instruction does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Cunningham, 105 Ohio St.3d 197,2004-Ohio-7007, at ¶ 56. See, also, State v. Adams (1980),62 Ohio St.2d 151, 154 (holding that a trial court's failure to specifically charge the jury on every element of an offense is not per se plain error, but could result in plain error if the failure substantially prejudiced the defendant). Appellate courts notice plain error "`with the utmost caution, under exceptional circumstances[,] and only to prevent a manifest miscarriage of justice.'" State v. Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68, quoting State v. Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus.
 {¶ 17} Commission of an OVI offense in violation of R.C.4511.19(A) is an element of the offense of endangering children in violation of R.C. 2919.22(C)(1). Thus, a fact finder can only convict a defendant of a violation of R.C. 2919.22(C)(1) if it first finds, beyond a reasonable doubt, that the defendant violated R.C. 4511.19(A) by driving under the influence. Here, Murphy was separately charged with OVI and that charge was submitted to the jury, even though the trial court never described it to the jury as a violation of R.C. 4511.19(A). The jury, however, was unable to reach a verdict on the OVI charge. Because the jury could not find that Murphy committed the OVI offense, we must conclude that, if the trial court had properly instructed the jury on the endangering children offense, the jury would not have convicted Murphy of that offense. Therefore, but for the trial court's error in instructing the jury, the outcome of the trial — the conviction for endangering children — would have been different. Accordingly, the trial court's failure to instruct the jury on what constituted a violation of R.C.4511.19(A) is plain error, and we sustain Murphy's second assignment of error to the extent that it so asserts.
 {¶ 18} We next turn to Murphy's sixth assignment of error, by which she argues, in part, that the evidence underlying her convictions is insufficient. Although we agree that the evidence is not sufficient to support Murphy's conviction for possession of drugs, we find that the evidence is sufficient to support her conviction for endangering children.
 {¶ 19} The operative inquiry in a sufficiency of the evidence analysis is whether the evidence is adequate to sustain a verdict. State v. Thompkins (1997), 78 Ohio St.3d 380, 386-387. When reviewing the sufficiency of the evidence, an appellate court must:
[E]xamine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. * * *
State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. This test raises a question of law and does not allow the court to weigh the evidence. Thompkins, at 386;State v. Thomas (1982), 70 Ohio St.2d 79, 79-80. Rather, the sufficiency of the evidence test "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v.Virginia (1979), 443 U.S. 307, 319, 99 S.Ct. 2781. Consequently, when reviewing the sufficiency of the evidence, an appellate court must accept the fact finder's determination with regard to the credibility of the witnesses. State v. Yarbrough,95 Ohio St.3d 227, 2002-Ohio-2126, at ¶ 79; State v. Worrell, Franklin App. No. 04AP-410, 2005-Ohio-1521, at ¶ 41 ("In determining whether a conviction is based on sufficient evidence, we do not assess whether the evidence is to be believed, but, whether, if believed, the evidence against a defendant would support a conviction.").
 {¶ 20} A jury must convict a defendant of possession of drugs if the defendant "knowingly obtain[ed], possess[ed], or use[d] a controlled substance." R.C. 2925.11(A). A "controlled substance" is "a drug, compound, mixture, preparation, or substance included in schedule I, II, III, IV, or V." R.C. 3719.01(C). See, also, R.C. 2925.01(A) (stating that, as used in R.C. 2925.11, "controlled substance" has the same meaning as in R.C. 3719.01).
 {¶ 21} In the case at bar, Murphy was charged with "knowingly obtain[ing], possess[ing], or us[ing] Valium, a schedule IV controlled substance, to wit: 3½ blue pills marked `DAN 5620' (identified as Valium) found inside her brown purse."[1]
Murphy does not dispute that Officer Anderson found the pills in her purse, but she argues that the city did not introduce admissible evidence to prove that the pills were Valium. However, we find otherwise because, as shown in the videotape, Murphy herself identified the pills, stating "[t]hose are Valium."
 {¶ 22} Murphy next argues that the city did not introduce any evidence proving that Valium is a "controlled substance," i.e., a substance that appears in schedule IV or any other schedule. To support this argument, Murphy correctly points out that "Valium" is not listed in any schedule. In response, the city argues that the testimony of the three OSU employees established that Murphy's urine contained the "byproducts" of Valium, which are listed in schedule IV. We find the city's argument unavailing for two reasons. First, the OSU employees testified exclusively about the results of the urine analysis, not the components of the pills found in Murphy's purse. Second, and more importantly, the city misrepresents the OSU employees' testimony. Although the OSU employees stated that Murphy's urine contained nordiazepam and temazepam — both of which are depressants listed in schedule IV — the OSU employees never testified that nordiazepam and temazepam are "byproducts" of Valium. Significantly, none of the OSU employees even mentioned Valium, much less tied Valium to a substance contained in schedule IV or any other schedule. Because our review of the evidence discloses no other evidence proving that Valium is a "controlled substance," we conclude that the city failed to prove that element of the possession of drugs offense, and thus, Murphy's conviction is not based on sufficient evidence.
 {¶ 23} By her sixth assignment of error, Murphy also argues that the city introduced insufficient evidence to prove that she endangered her children in violation of R.C. 2919.22(C)(1). Although we have already found error necessitating reversal of Murphy's conviction for endangering her children, Murphy's sufficiency of the evidence argument is not moot. State v.Lovejoy, 79 Ohio St.3d 440, 450, 1997-Ohio-371. Retrial is permissible when an appellate court sets aside a conviction due to error in the proceedings, but not when the reversal is premised upon evidentiary insufficiency. Id. See, also, State v.Duncan, 154 Ohio App.3d 254, 2003-Ohio-4695, at ¶ 42 (finding that reversal due to the giving of erroneous jury instructions does not bar the state from retrying the defendant). Once an appellate court has found the evidence insufficient to support a conviction, "`[t]he Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding.'" Tibbs v. Florida (1982), 457 U.S. 31, 41,102 S.Ct. 2211, quoting Burks v. United States (1978),437 U.S. 1, 11, 98 S.Ct. 2141. Therefore, even though we have found an error requiring reversal of Murphy's endangering children conviction, we must now determine whether the error is such that the city is precluded from retrying Murphy.
 {¶ 24} A jury must convict a defendant of endangering children if the defendant: (1) operates a vehicle within Ohio, (2) in violation of R.C. 4511.19(A), (3) when one or more children under 18 years of age are in the vehicle. R.C.2919.22(C)(1). R.C. 4511.19(A)(1)(a) prohibits a person from "operat[ing] any vehicle * * * within this state, if, at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them."
 {¶ 25} In the case at bar, Murphy first argues that the city failed to prove that her children, who were passengers in her Sport Trac, were younger than 18. However, the jury could rely upon the videotape to infer the approximate ages of the children. Based upon their appearances, all of the children were under ten years of age at the time of the incident.
 {¶ 26} Second, Murphy argues that no evidence established that she had ingested a "drug of abuse." As used in the Revised Code, a "drug of abuse" is any "controlled substance" as that term is defined in R.C. 3719.01. R.C. 3719.011(A). R.C.3719.01(C) defines a "controlled substance" as a substance included in schedules I, II, III, IV, or V. Both nordiazepam and temazepam are schedule IV drugs. R.C. 3719.41. The three OSU employees testified that Murphy's urine contained both drugs. Therefore, the city presented evidence sufficient to establish that Murphy ingested a "drug of abuse."
 {¶ 27} Third, Murphy argues that the city failed to prove that she was "under the influence" of the depressants she ingested. A person is "under the influence" if he displays any abnormal mental or physical condition that results from imbibing a drug of abuse and that deprives the user of intellect and control that he would otherwise possess. State v. Vingino,
Belmont App. No. 05 BE 28, 2006-Ohio-3484, at ¶ 16, citing Statev. Hardy (1971), 28 Ohio St.2d 89, 90. See, also, State v.Stephenson, Lawrence App. No. 05CA30, 2006-Ohio-2563, at ¶ 21 (finding that a driver is considered "under the influence" when his physical and mental abilities to act and react are altered from normal because of the consumption of a drug of abuse).
 {¶ 28} In the case at bar, Murphy's actions were those of a person both mentally and physically impaired. The videotape shows Murphy driving erratically — weaving, drifting outside her lane, and speeding. When Officer Anderson questioned Murphy and tested her sobriety, her speech was slow and slurred, her eyes constricted and droopy, and her balance poor. Even as Officer Anderson searched her vehicle, Murphy dozed off in the backseat of the cruiser. Further, the city introduced evidence to explain this impairment — testimony that Murphy's urine tested positive for nordiazepam and temazepam. Viewing this evidence in a light most favorable to the city, we conclude that a reasonable person could have found that Murphy was "under the influence" of the schedule IV depressants found in her system. Thus, we conclude that the city offered sufficient evidence to support Murphy's conviction for endangering children.
 {¶ 29} Accordingly, we sustain Murphy's sixth assignment of error to the extent that it asserts error with regard to her possession of drugs conviction, but we otherwise overrule it.
 {¶ 30} For the foregoing reasons, we overrule as moot Murphy's first, third, fourth, fifth, seventh, and eighth assignments of error. We sustain Murphy's second assignment of error to the extent that it asserts error in failing to instruct the jury on the meaning of R.C. 4511.19(A), but we overrule the remainder of that assignment of error as moot. We sustain Murphy's sixth assignment of error to the extent that it asserts error with regard to her possession of drugs conviction, but we overrule it to the extent that it asserts error with regard to her endangering children conviction. Based upon our resolution of Murphy's assignments of error, we reverse the judgments of the Franklin County Municipal Court. Additionally, we remand this case to that court for further proceedings in accordance with law and this opinion.
Judgments reversed and case remanded.
Bryant and Sadler, JJ., concur.
[1] The evidence must establish that Murphy violated R.C.2925.11(A) in the particular manner the complaint specified.State v. Lewis (1970), 21 Ohio St.2d 203, 210-211 ("The indictment, information, or affidavit in a criminal prosecution necessarily confines the state to the charge made against the defendant, in order that the defendant shall know, as the Constitution provides, `the nature of the accusation against him.'"). Therefore, because the complaint specified that Murphy violated R.C. 2925.11(A) by possessing three and one-half pills of Valium, evidence that Murphy's urine contained nordiazepam and temazepam — two Schedule IV drugs — is irrelevant to our sufficiency of the evidence analysis.